1  Robert Mittelstaedt (State Bar No. 060359)
   ramittelstaedt@jonesday.com
2  Shawn Hanson (State Bar No. 109321)
   shanson@jonesday.com
3  David C. Kiernan (State Bar No. 215335)
   dkiernan@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA  94104
   Telephone:    (415) 626-3939
6  Facsimile:    (415) 875-5700

7  Attorneys for Defendant
   MERIDIAN REAL ESTATE INVESTMENT
8  COMPANY II

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13  **MERIDIAN INVESTMENT**              Case No.
    **MANAGEMENT, INC.,**
14                                        **NOTICE OF REMOVAL OF CIVIL**
              **Plaintiff,**              **ACTION UNDER 28 U.S.C. § 1441**
15
           **v.**                         [DIVERSITY JURISDICTION]
16
    **MERIDIAN REAL ESTATE**
17  **INVESTMENT COMPANY II, a Cayman**
    **Islands Company**
18
              **Defendants.**
19

20      TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR

21  THE NORTHERN DISTRICT OF CALIFORNIA:

22      PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1441, Defendant Meridian Real

23  Estate Investment Company II ("FUND II") hereby removes the action entitled *Meridian*

24  *Investment Management, Inc. v. Meridian Real Estate Investment Company II, a Cayman Islands*

25  *Company; and Does 1 through 10, inclusive*, Case No. CGC-08-473759 ("Superior Court

26  Action") from the Superior Court of the State of California for the County of San Francisco to the

27  United States District Court for the Northern District of California, San Francisco Division, on

28  the basis of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  In support of

SFI-583960v1                          NOTICE OF REMOVAL OF CIVIL ACTION
                                              FROM STATE COURT

its notice of removal, FUND II states as follows:

1.      On March 28, 2008, Plaintiff commenced this action against FUND II and Does 1 through 10 by filing a complaint in the Superior Court of the State of California for the County of San Francisco, entitled *Meridian Investment Management, Inc. v. Meridian Real Estate Investment Company II, a Cayman Islands Company; and Does 1 through 10, inclusive*, Case No. CGC-08-473759.  The Complaint alleges two separate causes of action, First Cause of Action ("Breach of Contract") and Second Cause of Action ("Slander Per Se"), seeking a sum exceeding $12,000,000.00.

2.      On April 23, 2008, FUND II was served with the Summons and Complaint.  A true and correct copy of the Complaint and Summons is attached hereto as Exhibit A.

3.      Exhibit A constitutes all process, pleadings, and orders served on FUND II in this action to date.

4.      FUND II has filed this notice within thirty (30) days after service of the Complaint, which was the first paper from which FUND II could ascertain that the action was removable.  Pursuant to 28 U.S.C. § 1446(b), therefore, this Notice of Removal of Civil Action from State Court is timely filed.

## **JURISDICTION**

5.      This Court has original jurisdiction of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of costs and interests, and is between a citizen of a state and a citizen of a foreign state:

(a)      Plaintiff's First Cause of Action ("Breach of Contract") seeks "a sum exceeding $7 million," Compl. ¶ 34, and Second Cause of Action ("Slander Per Se") seeks a "sum exceeding $5 million."[1]  Compl. ¶ 44.

(b)      Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  FUND II is informed and believes that Plaintiff was, at the time this action

---

[1] *See also* Plaintiff's Prayer For Relief, seeking "general damages according to proof in a sum exceeding $12 million."

NOTICE OF REMOVAL OF CIVIL ACTION
FROM STATE COURT

1   was commenced in the Superior Court, and still is, a citizen of Delaware and of California, as it

2   "is a Delaware corporation with its principal place of business in San Francisco, California, duly

3   registered and licensed to conduct business in the State of California." Compl. ¶ 1.

4           (c)     FUND II was, at the time of filing this action in the Superior Court, and

5   still is, incorporated in the Cayman Islands and exists under the laws of the Cayman Islands, with

6   its principal place of business in Kuwait.  Declaration of Mutasem Al- Shihabi ("Shihabi Decl."),

7   ¶ 3, Exhibit B.  FUND II engages in passive investment activity, owning and managing shares of

8   non-voting stock in companies incorporated in California.  *Id.*, ¶ 4.  When determining the

9   principal place of business of a corporation engaged in the ownership and management of passive

10  investment assets, such as debt or equities, courts apply the so-called "nerve center" test—*i.e.*, the

11  place where the corporation's officers or directors direct, control, and coordinate the activities of

12  the corporation.[2]  FUND II's officers, directors, and liquidators are citizens (except for one who is

13  a citizen of Jordan) and residents of Kuwait; FUND II's officers, directors, and liquidators direct,

14  control, coordinate, and make all corporate decisions regarding FUND II's business activities and

15  financial affairs in Kuwait; FUND II's Directors and Shareholders meetings are held in Kuwait;

16  FUND II's books and records are maintained in Kuwait and the Cayman Islands; FUND II's

17  registered office is in the Cayman Islands; the administrative services, including accounting,

18  reporting, and investor services, are performed in the Cayman Islands; and FUND II's bank

19  account is located in the Cayman Islands.  Shihabi Decl., ¶¶ 5-12.  FUND II does not have

20  offices, employees, facilities, operational activities or tangible property in California or any other

21  state in the United States.[3]  Shihabi Decl., ¶ 13.

22

23          [2] *Vareka Invests., N.V. v. American Invest. Props., Inc.*, 724 F.2d 907, 910 (11th Cir.
24  1984) (holding that Vareka, which "was formed as a passive investment vehicle in order to invest
    funds in United States real estate," was a citizen of Ecuador, where its corporate decisions were
25  made); *see also Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998) (holding that nerve center
    test applies when corporation engages in passive investment activity); *Nauru Phosphate*
26  *Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 163-64 (5th Cir. 1998) (same and
    holding that principal place of business is either in Nauru or Australia and not in Texas).
27
            [3] *See, e.g., Peterson*, 142 F.3d at 185 (noting that "place of operations" test would result in
28  the same conclusion as the "nerve center" test for a passive investment company).

SFI-583960v1                                                NOTICE OF REMOVAL OF CIVIL ACTION
                                    - 3 -                    FROM STATE COURT

1          (d)     Defendants designated as Does 1 through 10 are fictitious defendants, are

2  not parties to this action, have not been served, and are to be disregarded for the purposes of

3  removal.  28 U.S.C. § 1441(a).

4        6.     Pursuant to 28 U.S.C. § 1446(d), FUND II will provide written notice of removal

5  of the above-entitled action to Plaintiff and will file a copy of this Notice of Removal with the

6  Clerk of the Superior Court of the State of California for the County of San Francisco.

7                    **INTRADISTRICT ASSIGNMENT**

8        7.     Because the Superior Court Action was filed in the Superior Court of California

9  for the County of San Francisco, this case may be removed to the Northern District of California,

10  San Francisco Division.  28 U.S.C. § 1441(a).

11        8.     FUND II expressly reserves all of its defenses and denies any liability or that

12  Plaintiff has been injured in any way.

13        Based on the foregoing, this action is a civil action of which this Court has original

14  jurisdiction and which may be removed by FUND II to this Court pursuant to 28 U.S.C. §§ 1332,

15  1441, and 1446.

16

17  Dated: May 20, 2008                  Respectfully submitted,

18                                     Jones Day

19

20                            By: _____

21                                 David C. Kiernan

22                           Counsel for Defendant

23                           MERIDIAN REAL ESTATE INVESTMENT
                               COMPANY II

24

25

26

27

28

# EXHIBIT A

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Meridian Real Estate Investment Company II, a Cayman
Islands company

and Does 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Meridian Investment Management, Inc., a Delaware
Corporation

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court
400 McAllister Street
San Francisco, CA  94102

CASE NUMBER:
*(Número del Caso)*
CGC-08-473759

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Douglas A. Applegate (SBN 142000)          (415) 979-0500
Seiler Epstein Ziegler & Applegate LLP
101 Montgomery Street, 27th Floor
San Francisco, CA  94104

M. RAYRAY

DATE:                                     Clerk, by _____, Deputy
*(Fecha)*    MAR 26 2008  Gordon Park-L   *(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*  Meridian Real Estate Investment company II

under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

**BY FAX**



1    William J. Ziegler (SBN 041203)
     Douglas A. Applegate (SBN 142000)
2    SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
     101 Montgomery Street, 27th Floor
3    San Francisco, California 94104
     Phone: (415) 979-0500
4    Fax:   (415) 979-0511

5    Attorneys for Plaintiff
     Meridian Investment Management, Inc.

**ENDORSED**
**FILED**
Superior Court of California
County of San Francisco

MAR 2 8 2008

GORDON PARK-LI, Clerk
BY: _____
             Deputy Clerk

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

**BY FAX**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| MERIDIAN INVESTMENT MANAGEMENT, INC., a Delaware Corporation<br><br>          Plaintiff,<br><br>      vs.<br><br>MERIDIAN REAL ESTATE INVESTMENT COMPANY II, a Cayman Islands company; and DOES 1 through 10, inclusive.<br><br>          Defendants, | Case No. **CGC-08-473759**<br><br>**COMPLAINT** |

COMES NOW plaintiff MERIDIAN INVESTMENT MANAGEMENT, INC. and alleges against the defendants as follows:

I.

PARTIES

1.  Plaintiff MERIDIAN INVESTMENT MANAGEMENT, INC. ("MIM") is a Delaware corporation with its principal place of business in San Francisco, California, duly registered and licensed to conduct business in the State of California.

1

COMPLAINT

2. Defendant MERIDIAN REAL ESTATE INVESTMENT COMPANY II ("FUND II") is a company organized in the Cayman Islands.

3. Plaintiff is unaware of the true names of the defendants sued herein as DOES 1 through 10 and accordingly sues these defendants by fictitious names. Plaintiff will amend the complaint to allege the true names and capacities of defendants DOES 1 through 10 when the true names and capacities have been ascertained. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were responsible in some manner for the damages and injuries described in this Complaint.

II.

VENUE

4. Venue is appropriate in the Superior Court of the State of California, City and County of San Francisco, because the contract between the parties was to be performed in San Francisco, and because defendants' tortuous conduct was directed at plaintiff in San Francisco and was intended to, and did, cause harm to plaintiff in San Francisco.

III.

FACTUAL BACKGROUND

5. On or about September 1, 2000, MIM and FUND II entered into a written contract, pursuant to which MIM agreed to provide investment advice and management services to FUND II in exchange for a fee, predominantly measured on an annual basis at 1% of the value of the FUND II assets under management. A true and correct copy of the Advisory Agreement ("the Contract") is attached hereto as Exhibit A.

6. When the parties entered into the Contract, FUND II wished to invest approximately $50 million in California real estate, to be leveraged into an asset portfolio exceeding $200 million value (with a corresponding fee to MIM of roughly $2 million annually). A significant portion of the shareholders in FUND II were Kuwaiti nationals who had worked with MIM before.

7. Pursuant to the Contract and the parties' intentions, MIM located three attractive real estate investment opportunities in California – one located at 450 Sansome Street in San

2

COMPLAINT

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    Francisco, and the other two located in San Diego, California.  MIM arranged for three separate

2    corporations to be formed to hold ownership of each of the three properties, and arranged for

3    the real estate acquisition financing, and for the management of the properties, both to provide

4    cash flow through the collection of rents, and also to provide value growth through the

5    appreciation of equity in the three properties.

6        8.  The property at 450 Sansome Street in San Francisco was successfully purchased on

7    or about September 21, 2000 for slightly more than $50 million.  That property predominantly

8    consisted of class-A commercial office leasehold space in the downtown financial district area

9    of San Francisco.  The two San Diego properties were purchased in late 2000 or early 2001 for

10   more than $25 million.  Accordingly, by early 2001, MIM was actively managing assets for

11   FUND II valued at more than $75 million, and earning a contractual fee in excess of $750,000

12   annually.

13       9.  In the months following September 11, 2001, the prevailing leasehold rates for

14   class-A commercial office space in San Francisco plummeted.  To ride out the market

15   downturn, MIM arranged for a restructuring of the loan on the 450 Sansome Street property to:

16   (a) extend the term of the loan; (b) convert the payments on the loan to interest only payments;

17   (c) reduce the principal amount of the loan with a $1 million pay down, drawn from the equity

18   available in the San Diego properties; and (d) further reduce the principal by approximately $5

19   million in loan forgiveness by the lender.

20       10. With this restructuring, the 450 Sansome Street property would have generated in

21   rents sufficient cash to cover all property expenses, including taxes, maintenance and debt

22   service.  The San Diego properties continued to generate sufficient income to meet all

23   expenses, and also continued to appreciate in value.

24       11. On or about July 6, 2002, a Kuwaiti national named Mutasem Al-Shihabi became

25   the chief executive officer of FUND II.  Mr. Al-Shihabi had a different idea of how to reduce

26   expenses for FUND II: circumvent MIM's management fee.

27       12. Within days of being appointed as the chief executive officer of FUND II,

28   Mr. Al-Shihabi telephoned Carl Stegerwald, one of MIM's shareholders and officers, and a key

1  member of MIM's management and financial advisory team.   On behalf of FUND II,
2  Mr. Al-Shihabi tried to entice Mr. Stegerwald to leave MIM and personally take over the
3  management of the FUND II assets, at a vastly reduced management fee.

4      13. When Mr. Stegerwald refused, Mr. Al-Shihabi, acting on behalf of FUND II,
5  formed a 5-prong strategy to break the Contract with MIM:  (a) subject MIM to costly audits
6  and unreasonable demands for information; (b) force the sale or transfer of FUND II's assets,
7  so that MIM's management fee would be correspondingly reduced; (c) interfere with the
8  prudent management of FUND II's assets by preventing the use of the cash flow or equity in
9  the San Diego properties to ride out the market downturn in San Francisco; (d) subject MIM to
10 the repeated threat of meritless, but costly, litigation; and (e) falsely report to FUND II's
11 shareholders (including those who had a prior business relationship with MIM) that MIM had
12 and continued to mismanage the fund assets.

13     14. Mr. Al-Shihabi proceeded to implement his 5-prong strategy on behalf of
14 FUND II, most explicitly demonstrating that he was acting with a motivation to break the
15 Contract through a letter dated February 22, 2003 that demanded that MIM agree to a reduced
16 fee and demanded that MIM agree replace the Contract with a new agreement, with the threat
17 that otherwise, costly litigation would ensue.

18     15. MIM did not agree to FUND II's extortionate demands, but, as Mr. Al-Shihabi
19 proceeded to implement the 5 prongs of his strategy to break the Contract, MIM found it
20 increasingly impossible to prudently manage FUND II's assets.

21     16. As noted above in paragraph 9, MIM was able to negotiate with the lender for the
22 450 Sansome Street property a forgiveness of nearly $5 million in debt.  FUND II, however,
23 acting through Mr. Al-Shihabi, refused to accept the new loan terms and insisted that if the
24 lender would not provide an additional $3 million in loan forgiveness, that instead of rewriting
25 the loan, MIM must instead deed the property to the lender and accept the loss.

26     17. MIM explained, time and again, that the market downturn in San Francisco was
27 temporary, and was the product of a confluence of an economic downturn caused by the attacks
28 of September 11, 2001, and the implosion of the dot.com real estate bubble.  Time and again,

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

1    MIM explained that the prudent approach was to restructure the loan on the terms that MIM

2    had negotiated, and to ride out the economic cycle.

3        18. FUND II, acting through Mr. Al-Shihabi, refused to accept MIM's sound advice,

4    motivated by its desire to break the Contract.

5        19. FUND II further caused a shareholders meeting to be called and conducted on

6    August 25, 2003, but FUND II and Mr. Al-Shihabi intentionally failed to notify MIM of the

7    shareholder's meeting, even though MIM was a 1.5% minority shareholder of FUND II.

8    Within the last three years, MIM has learned that at that shareholders meeting, which was held

9    at 11:45 am at the offices of the Al Mal Kuwaiti Company in Safat, Kuwait, Mr. Al-Shihabi,

10   acting as an officer of FUND II and acting within the scope and course of his agency, falsely

11   told the shareholders of FUND II that MIM had mismanaged the assets of FUND II, that their

12   investment in FUND II was lost, and that MIM had overcharged the fund with management

13   fees while investing in speculative investments that had lost value that could not be recouped.

14       20. Relying upon the false information provided to them by Mr. Al-Shihabi, the

15   shareholders of FUND II voted to instruct MIM to sell the entire FUND II portfolio.

16       21. Thereafter, Mr. Al-Shihabi, acting in the scope and course of his agency as the chief

17   executive officer of FUND II, again refused the restructuring of the loan on 450 Sansome

18   Street that MIM had arranged, and again rejected MIM's advice to ride out the real estate cycle.

19   Instead, Mr. Al-Shihabi instructed and directed MIM to deed the 450 Sansome Street property

20   to the lender, in lieu of foreclosure.

21       22. On March 30, 2004, at FUND II's direction, and under the threat of meritless but

22   costly litigation, MIM capitulated and deeded the 450 Sansome Street to the lender.

23       23. As MIM had predicted and explained, the San Francisco real estate market quickly

24   rebounded, and within less than 2 years, the property at 450 Sansome Street was worth double

25   what FUND II had purchased it for. Through its vindictive strategy and its ill-conceived effort

26   to break the Contract and avoid the management fees that it had contractually agreed to pay,

27   FUND II foisted upon its shareholders a loss of investment profit of more than $50 million.

28

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

5

24. In addition, through its actions as set forth above, FUND II caused MIM to lose management fees that it was contractually entitled to, in a sum exceeding $1 million per year.

25. In the year following the loss of the 450 Sansome Street property, MIM also sold, at FUND II's direct instruction and without commercially reasonable grounds, the two San Diego properties. FUND II's conduct has thus caused MIM's management fee to be reduced to $0.

26. At the time FUND II was created and the Contract negotiated and signed, all parties recognized that the type of real estate investments that FUND II desired provided a long-term investment opportunity – an investment path that would most likely require at least 10 years before it made economic sense to liquidate the investment and provide the return of profits to the FUND II shareholders.

27. Accordingly, if Mr. Al-Shihabi, acting on behalf of and within the scope and course of his agency, had not caused FUND II to embark on the ill-conceived strategy to break the Contract, MIM would have earned its contractual management fee on a property portfolio exceeding $100 million in value for a period lasting until at least the year 2010. Instead, MIM was relegated to managing a vastly reduced portfolio for a vastly shorter period.

28. The loss caused to MIM by FUND II's intentional breach of the parties' agreement thus exceeds $7 million.

IV.

FIRST CAUSE OF ACTION

BREACH OF CONTRACT

29. Plaintiff incorporates by reference, as though set forth in full, the allegations of paragraphs 1 through 28, above.

30. On or about September 1, 2000, MIM and FUND II entered into a written contract, pursuant to which MIM agreed to provide investment advice and management services to FUND II in exchange for a fee, predominantly measured on an annual basis at 1% of the value of the FUND II assets under management. A true and correct copy of the Advisory Agreement ("the Contract") is attached hereto as Exhibit A.

6

COMPLAINT

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    31. Under the covenant of good faith and fair dealing, implied into every contract,

2    FUND II in entering in the Contract agreed that it would not engage in any conduct to frustrate

3    MIM's rights to secure the contractual benefits of the management fee provided for in the

4    Contract. (See, e.g., *Pasadena Live v. City of Pasadena* (2004) 114 Cal.App.4th 1089, 1093.)

5    32. MIM performed all acts required of it by the Contract.

6    33. FUND II, however, intentionally acted to deprive MIM of the management fee to

7    which it was entitled. FUND II wrongfully subjected MIM to costly audits and unreasonable

8    demands for information; FUND II forced the sale or transfer of FUND II's assets, so that

9    MIM's management fee would be correspondingly reduced; FUND II interfered with the

10    prudent management of FUND II's assets by preventing the use of the cash flow or equity in

11    the San Diego properties to ride out the market downturn in San Francisco; FUND II subjected

12    MIM to the repeated threat of meritless, but costly, litigation; and FUND II falsely reported to

13    its shareholders (including those who had a prior business relationship with MIM) that MIM

14    had and continued to mismanage the fund assets, causing the shareholders to insist upon the

15    sale of FUND II's assets.

16    34. As a result of FUND II's breach of the covenant of good faith and fair dealing,

17    MIM was deprived of the management fees that it was contractually entitled to, and MIM has

18    accordingly been damaged in a sum exceeding $7 million, and subject to proof at trial.

19    35.    WHEREFORE, Plaintiff prays for relief as set forth below.

20    IV.

21    SECOND CAUSE OF ACTION

22    SLANDER PER SE

23    36. Plaintiff incorporates by reference, as though set forth in full, the allegations of

24    paragraphs 1 through 35, above.

25    37. Within the last three years, MIM has learned that on August 25, 2003, at a

26    shareholders meeting held at 11:45 am at the offices of the Al Mal Kuwaiti Company in Safat,

27    Kuwait, Mr. Al-Shihabi, acting as an officer of FUND II and acting within the scope and

28    course of his agency, falsely told the shareholders of FUND II that MIM had mismanaged the

1    assets of FUND II, that the shareholders' investment in FUND II was lost, and that MIM had

2    overcharged the fund with management fees while investing in speculative investments that

3    had lost value that could not be recouped.

4         38. These statements were false and were known by FUND II to be false.

5         39. Indeed, only four months earlier, Mr. Al-Shihabi, acting as an officer of FUND II

6    and acting within the scope and course of his agency, had truthfully reported, in writing, to

7    Ernst & Young LLP, accountants, that the investments of FUND II were being properly and

8    adequately managed, that "none of the Funds['] investments have permanently declined in

9    value to an amount less than the carrying amount in the financial statements" and that those in

10   charge of managing FUND II's assets had engaged in "no violations or possible violations of

11   laws or regulations."

12        40. The false statements made by Mr. Al-Shihabi to the shareholders of FUND II were

13   made as part of his efforts to break the Contract and force MIM to accept reduced payment for

14   its services.

15        41. The statements were intended to, and necessarily did, disparage MIM in the conduct

16   of its business and profession, and the statements were understood by all who heard them as

17   impugning MIM's competence, professionalism, ethical standards and acumen.

18        42. The audience who heard FUND II's defamatory statements included many investors

19   who had previously retained MIM's services and who likely would have, but for FUND II's

20   defamatory remarks, continued to retain MIM's services for the foreseeable future.

21        43. However, in response to Mr. Al-Shihabi's false remarks and representations,

22   knowingly made but made within the scope and course of his agency as FUND II's chief

23   executive office, the shareholders of FUND II were induced to, and did, cease doing business

24   with MIM.

25        44. As a result, MIM has not only lost the management fees that it would otherwise

26   have earned for providing services to FUND II pursuant to the Contract, but in addition, MIM

27   has lost additional business, causing it to incur further damages in a sum exceeding $5 million,

28   and subject to proof at trial.

*SEILER EPSTEIN ZIEGLER & APPLEGATE LLP*
*Attorneys at Law*

45.    WHEREFORE, Plaintiff prays for relief as set forth below.

V.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    For general damages according to proof in a sum exceeding $12 million;

2.    For costs of suit; and

3.    For such other and further relief as the court deems just and proper.

Dated: March 28, 2008

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP

By:_____
        Douglas A. Applegate

Attorneys for Plaintiff
Meridian Investment Management, Inc.

9

COMPLAINT

EXHIBIT A

EXHIBIT A

## ADVISORY AGREEMENT

This Agreement is made and entered into as of September 1, 2000, by and between Meridian Real Estate Investment Company II, a Cayman Islands company (the "Company"), and Meridian Investment Management, Inc., a Delaware corporation (the "Advisor").

WHEREAS, the Company desires to avail itself of the experience, resources, advice and assistance of the Advisor and to have the Advisor undertake duties and responsibilities hereinafter set forth with respect to real estate investments of the Company, whether made directly or through its subsidiaries (which term shall be deemed to include any company of which the Company owns more than 50% of the equity capitalization, without regard to voting power), subject to the supervision of the Board of Directors of the Company (the "Board"), as provided in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

## ARTICLE I

### Appointment

The Company hereby appoints the Advisor to serve as its investment and management advisor on the terms and conditions set forth in this Agreement, and the Advisor hereby accepts such appointment.

## ARTICLE II

### Duties of Advisor

Subject to the supervision of the Board, the Advisor shall use its best efforts to perform the following duties for and on behalf of the Company (which shall be deemed to include, except as the context indicates otherwise, any subsidiary through which the Company invests):

2.1    Investment Plan. The Advisor, in consultation with the Board, shall establish and maintain an appropriate plan for investment in real estate in the United States consistent with the Company's overall investment objectives, which plan shall include policy guidelines for property type and size, geographic diversification, tenancy, yield, leverage and such other factors as the Board may from time to time determine.

2.2    Market Research. The Advisor shall gather and evaluate information, conduct market research on real estate markets in the United States, and the local and national trends, comparative values and economic and financial data affecting the Company's real estate investments and investment policies and objectives in such markets.

2.3    Investments.  The Advisor shall, on behalf of the Company, identify, investigate and evaluate appropriate properties for investment; furnish advice with respect to the acquisition thereof; negotiate the price and terms of investments; negotiate options to acquire such properties when requested by the Company's Board and assign options acquired by the Advisor to the Company; perform or supervise a due diligence examination of potential investments, including environmental, structural and legal reviews; and supervise the documentation of investments.

2.4    Portfolio Management.  The Advisor shall advise the Company on all aspects of the Company's portfolio of real estate investments in an effort to optimize the long-term investment results of the portfolio (including without limitation the management of the day-to-day operations of the Company, the preparation of operating and maintenance budgets, capital improvement budgets and schedules for improvements; monitoring borrower compliance with any mortgage loans made by the Company and assistance in the negotiation of significant leases) and shall perform and supervise the performance of such other administrative functions in connection with the management of the Company as may be agreed upon by the Advisor and the Board.  The Advisor will also develop and maintain strategic management plans for each property relating to such issues as refinancing, property taxes and sales strategies.

2.5    Property Management.  The Advisor, on behalf and at the expense of the Company, shall, with such assistance of consultants or local subadvisors as the Advisor may require, investigate, select and retain, as appropriate, property managers and, following appointment of each such property manager, conduct relations with such property manager in connection with the Company's properties managed by it.  Any such property managers may be affiliates of the Advisor.

2.6    Financing Activities.  The Advisor shall negotiate, as appropriate, on behalf of the Company, with investment banking firms, banks, insurance companies, pension funds, mortgage lenders and other institutions or investors for secured or unsecured borrowings by the Company.

2.7    Sales.  The Advisor shall, on behalf of the Company, identify appropriate properties for sale, negotiate the price and other terms of sale and supervise the documentation related to the consummation of such sales.

2.8    Investment of Cash.  The Advisor shall advise the Company on the short-term investment and reinvestment of any idle monies of the Company in accordance with the Company's investment policies.

2.9    Reports and Records.  The Advisor shall, on behalf of the Company, maintain appropriate records and documents for each property in the Company's portfolio.  The Advisor shall, on behalf of the Company, cause to be prepared and delivered to the shareholders of the Company annual and semi-annual reports which contain financial statements and which will discuss investment activity during the period and the status of the Company's investments and contain such additional information which the Advisor deems relevant to the shareholders.

## ARTICLE III

### Compensation

The Company shall pay the Advisor for its services compensation at the rates and at the times specified herein.

3.1    Advisory Fee.  The Company shall pay the Advisor an annual fee equal to one percent (1%) of the overall value of the Company's assets under management.  For purposes of this Section 3.1, assets contributed by the Company to its subsidiaries shall be deemed assets of the subsidiaries and not of the Company, provided the Company has entered into an assignment agreement with the relevant subsidiary whereby the subsidiary assumes the fee obligation to the Manager with respect to such amounts, in which case the subsidiary rather than the Company shall be liable to the Advisor for the fee in respect thereof.  Such fee shall be payable within ten days following the end of each quarter in an amount equal to 0.25% of the average Unreturned Capital during such quarter.  If this Agreement is terminated prior to the end of a quarter pursuant to Section 5.2 hereof, the fee payable for such quarter shall equal a pro rata percentage of 0.25%, based on the number of days in the quarter which have elapsed prior to termination, times the average Unreturned Capital for the period commencing with the first day of such quarter and ending on the date of termination.

3.2    Additional Services.  If the Company shall request the Advisor to render services to the Company other than those required to be rendered by the Advisor hereunder, such additional services, if performed, shall be compensated separately on terms to be agreed upon from time to time between the Advisor and the Company, which terms shall not exceed either (a) the terms under which the Advisor is then performing similar services for others or (b) the terms under which qualified unaffiliated persons are then performing such services for comparable organizations.

3.3    Expenses of the Advisor.  Without regard to the amount of compensation received hereunder by the Advisor, the Advisor will bear the following expenses:

(a)    Employment expenses of the personnel employed by the Advisor and of officers, directors and employees of the Company who are also employees of the Advisor including, but not limited to, salaries, wages, incentive payments, payroll taxes and the cost of employee benefit plans; and

(b)    Rent, telephone, utilities, office furniture and equipment and machinery (including computers, to the extent utilized) and other office expenses of the Advisor.

3.4    Expenses of the Company.  The Company shall pay all of its expenses except those which are the responsibility of the Advisor pursuant to Section 3.3 of this Agreement and, without limiting the generality of the foregoing, it is agreed that the following expenses of the Company shall be paid by the Company:

(a)    To the extent the Advisor is not required to pay such expenses pursuant to Section 3.3(a) hereof, salaries and other employment expenses of the personnel employed by the

- 3 -

Company; directors' fees and expenses incurred in attending directors' meetings; and the cost of directors' and officers' liability insurance;

(b)     Expenses relating to any office or office facilities maintained by the Company separate from the office or offices of the Advisor;

(c)     Advertising and promotional expenses, if any, incurred by the Advisor in seeking investments for the Company or seeking to sell any of the Company's assets;

(d)     The cost of borrowed money;

(e)     All taxes applicable to the Company;

(f)     Legal, accounting, auditing, underwriting and other expenses and taxes incurred in connection with the organization or dissolution of the Company, or the issuance, distribution or transfer of the Company's securities;

(g)     Fees and expenses paid to local subadvisors and independent contractors, consultants, managers and other agents employed directly by the Company or by the Advisor at the Company's request for the account of the Company;

(h)     To the extent not paid by borrowers from the Company, costs of loan administration and mortgage servicing;

(i)     Expenses connected with the acquisition, disposition, leasing and ownership of investments, including, to the extent not paid by others, but not limited to: legal fees and other expenses of professional services; maintenance, repair and improvement of property; brokerage and sales commissions; and expenses of the Advisor's personnel in traveling in connection with the performance of its duties hereunder;

(j)     All insurance costs incurred in connection with the Company;

(k)     Expenses connected with payments of dividends or interest or distributions in cash or any other form made or caused to be made by the Board of Directors to holders of securities of the Company;

(l)     All expenses connected with communications to holders of securities of the Company and the other bookkeeping and clerical work necessary in maintaining relations with holders of securities and in complying with the continuous reporting and other requirements of governmental bodies or agencies, including the cost of printing and mailing certificates for securities and proxy solicitation materials and reports to holders of the Company's securities;

(m)     Transfer agent and registrar's fees and charges; and

(n)     Legal, appraisal, accounting and auditing fees and expenses.

3.5     Reimbursement of the Advisor.  To the extent that the Advisor pays any of the expenses of the Company set forth in Section 3.4, the Advisor shall, within 30 days after each

month in which such expenses were incurred, invoice the Company therefor, and the Company shall pay such invoice within 30 days after the date of the invoice.

## ARTICLE IV

### Other Activities of the Advisor

4.1     Other Activities. Nothing in this Agreement shall prevent the Advisor or an affiliate of the Advisor from engaging in other activities and receiving compensation therefor, including, without limitation, the rendering of advice to other investors and the management of other investments, including investors and investments advised, sponsored or organized by the Advisor or its affiliates, and including joint ventures and partnerships in which the Company is a co-venturer or partner and the other co-venturers and partners in such joint ventures and partnerships. Nothing in this Agreement shall limit or restrict the right of any director, principal, officer, employee or shareholder of the Advisor or an affiliate of the Advisor to engage in any other business or to render services of any kind to any other corporation, partnership, firm, individual, trust or association.

4.2     Allocation of Investment Opportunities. The Company acknowledges that the Advisor currently performs management services for entities other than the Company, and expects to perform management and other services for other entities in the future. If the Advisor is presented with a potential investment which might be made by more than one entity which it advises or manages, the decision as to the suitability of the property for investment by a particular entity will be based on a review of the investment objectives of each entity and upon such factors as cash available for investment, maximum investment limit per acquisition, the nature of the development, the time frame for funding the investment, other potential investments available to such entity, estimated income tax effects, leverage policies, any regulatory restrictions on investment and the length of time funds have been available for investment in the particular market. The Advisor will then determine for which entity the particular investment is most suitable and allocate to that entity the opportunity to make the particular investment.

## ARTICLE V

### Term and Termination

5.1     Term. This Agreement shall commence upon the date set forth above and will terminate upon liquidation of the Company unless earlier terminated pursuant to Section 5.2 hereof.

5.2     Termination. At the option of the Company, this Agreement may be terminated:

(a)     immediately if the Advisor shall violate any material provisions of this Agreement and, after written notice of such violation, shall not cure such default within 60 days;

(b)    immediately if the Advisor shall be adjudged bankrupt or insolvent by a court of competent jurisdiction, or any order shall be made by a court of competent jurisdiction for the appointment of a receiver, liquidator or trustee of the Advisor or of all or substantially all of its property by reason of the foregoing, or approving any petition filed against the Advisor for its reorganization;

(c)    immediately if the Advisor shall institute proceedings for voluntary bankruptcy or shall file a petition seeking reorganization under the Federal bankruptcy laws or for relief under any law for the relief of debtors, or shall consent to the appointment of a receiver of itself or of all or substantially all of its property, or shall make a general assignment for the benefit of its creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

(d)    immediately in the event it is "assigned" by the Advisor except to the extent such assignment is permitted in Section 8.2.

The Advisor agrees that if any of the events specified in subsections (b), (c) or (d) of this Section 5.2 shall occur, it will give written notice thereof to the Company within 7 days after the occurrence of such event.

5.3    <u>Compensation Upon Termination</u>.  Upon any termination of this Agreement, the Advisor shall be entitled to receive (a) immediate payment of any unpaid advisory fees payable pursuant to Section 3.1 hereof, (b) immediate payment of any reimbursement provided for in Section 3.5 and (c) reasonable compensation for the services, if any, which the Advisor performed after the date of such termination, payable within 30 days of the date such services were performed.

5.4    <u>Rights of Termination Cumulative</u>.  The rights of termination specifically provided shall be considered to be cumulative, and shall be in addition to the rights of termination for breach of the Agreement otherwise inuring to the parties by operation of law.

## ARTICLE VI

### Exculpation and Indemnification

The Advisor assumes no responsibility under this Agreement other than to render the services called for hereunder in good faith and shall not in any event be responsible for any action of the Company in following or declining to follow any advice or recommendations of the Advisor.  Neither the Advisor, its shareholders, directors, principals nor its employees shall be liable to the Company, the Board or the shareholders of the Company, except by reasons of acts constituting bad faith, willful misfeasance, gross negligence or reckless disregard of their duties.  The Advisor may consult with legal counsel, which may be the regular counsel of the Advisor or other counsel, independent public accountants or other professional advisors and, not withstanding anything to the contrary herein, shall not be liable for any action taken or omitted in good faith by it in accordance with the advice of such counsel, accountants or advisor, or at the request or direction of the Board in connection with the performance of its duties under this Agreement.

- 6 -

The Company shall indemnify and hold harmless the Advisor, its shareholders, directors, principals and employees from and against any and all liabilities, claims, damages or losses arising in the performance of its duties hereunder or from any act or omission arising out of its activities on behalf of the Company, including without limitation any judgement, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened proceeding, other than any loss or expense (a) arising from the Advisor's willful misfeasance, gross negligence or reckless disregard of its duties, (b) arising from a breach or failure by the Advisor to perform an obligation or responsibility under this Agreement or (c) as to which indemnification is barred by applicable law.

## ARTICLE VII

### Action Upon Termination or Cancellation

7.1     Accounting.  The Advisor shall immediately upon termination:

(a)     pay over to the Company all monies collected and held for the account of the Company pursuant to this Agreement, after deducting any accrued compensation and reimbursement for its expenses to which it is then entitled;

(b)     deliver to the Company a full accounting, including a statement showing all payments collected by it and a statement of all monies held by it, covering the period following the date of the last accounting furnished to the Company; and

(c)     deliver to the Company all property and documents of the Company then in the custody of the Advisor.

7.2     Change of Name.  Upon termination of this Agreement by either party, the Board of the Company shall, upon the written request of the Advisor, make reasonable efforts (including, if necessary, calling a meeting of shareholders and recommending an amendment to the Company's Memorandum and Articles of Association) to cause the name of the Company to be changed to a name that does not contain all or a distinctive portion of the name of the Advisor or any affiliate thereof or any approximation or abbreviation thereof and that is sufficiently dissimilar to such name as to be unlikely to cause confusion or identification with the Advisor.

## ARTICLE VIII

### Miscellaneous

8.1     Amendments.  This Agreement shall not be modified or terminated except by an instrument in writing signed by both parties hereto, or their respective successors or assigns, or otherwise as provided herein.

8.2     Assignment.  This Agreement shall not be assignable by either party without the consent of the other, except that the Company may assign its rights and transfer its obligations hereunder to one or more subsidiaries without the Advisor's consent as provided in Section 3.1.

- 7 -

Any permitted assignment of this Agreement shall be conditioned on the assignee's execution of a written instrument acceptable to the non-assigning party pursuant to which the permitted assignee agrees to be bound hereunder in the same manner as the assignor is bound hereunder.

8.3    No Partnership, Joint Venture or Agency.  The Company and the Advisor are not, and shall not be deemed to be, partners or joint venturers with each other, nor shall either be deemed the agent of the other.  Neither the Company, nor the Adviser shall be authorized to bind the other to any contract or obligation without the express written consent of the other.

8.4    Survival.  The provisions of Sections 5.3, 7.1 and 7.2 and Article VI (and any definitions necessary for the operation of such provisions) shall survive the termination of this Agreement.

8.5    Notices.  Any notice, report or other communication required or permitted to be given hereunder shall be in writing and shall be given:  (a) by delivery in person to an officer of the party to whom it is addressed, or (b) by telegraph, telecopy, international overnight delivery service or other commercially reasonable means, to the person to whom it is addressed at the following address:

To the Company:

Meridian Real Estate Investment Company II
c/o Maples & Calder
Ugland House
P.O. Box 309
Grand Cayman Islands
British West Indies
Attn:  Gareth Griffiths, Esq.

With a copy to:

Hale and Dorr LLP
60 State Street
Boston, MA  02109
Attn:  Christopher P. Harvey, Esq.

To the Advisor:
Meridian Investment Management, Inc.
One Main Street
Concord, MA  01742
Attn:  Carl Stegerwald

- 8 -

With a copy to:

>   Hale and Dorr LLP
>   60 State Street
>   Boston, MA 02109
>   Attn: Christopher P. Harvey, Esq.

If any notice is telegraphed, the same shall be deemed served or delivered forty-eight hours after the transmission thereof. Any notice or other documents sent or delivered in any other manner shall be effective only if and when received.

– Either party, by notices aforesaid, may designate a different address or addresses for notices, reports or other communications intended for it.

8.6    Headings. The section headings used herein have been inserted for convenience of reference only and do not constitute matters to be considered in interpreting this Agreement.

8.7    Governing Law and Jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts excluding that body of law pertaining to conflicts of law. The parties hereby irrevocably consent to the jurisdiction of the federal or state courts located within the Commonwealth of Massachusetts.

8.8    Entire Agreement. This Agreement contains the entire agreement between the parties with respect to the subject hereof and supersedes any prior written or oral agreements with respect to the subject hereof.

IN WITNESS WHEREOF, the Company and the Advisor have executed this Agreement as of the day and year first above written.

MERIDIAN REAL ESTATE INVESTMENT
COMPANY II

By: _____
Name: _____
Title: _____

Executed outside U.S.

MERIDIAN INVESTMENT MANAGEMENT, INC.

By: _____
Name: _____
Title: _____

Executed in Concord, Massachusetts

- 9 -

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

**The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))**

**Superior Court of California
County of San Francisco**

ADR-1   10/07 (ja)

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

# MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 provides three different voluntary mediation programs for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

ADR-1   10/07 (ja)

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

## Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

## Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1   10/07 (ja)

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

| | |
|---|---|
| | Case No. _____ |
| Plaintiff | **STIPULATION TO ALTERNATIVE** |
| v. | **DISPUTE RESOLUTION** |
| Defendant | |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation          ☐ Mediation Services of BASF     ☐ Judicial Mediation
☐ Binding arbitration                                                                Judge _____
☐ Non-binding judicial arbitration                                         Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06                    STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

CASE NUMBER: CGC-08—73759  MERIDIAN INVESTMENT M*... AGEMENT, INC., VS. MERID

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

|  | |
|---|---|
| **DATE:** | **AUG-29-2008** |
| **TIME:** | **9:00AM** |
| **PLACE:** | **Department 212** |
|  | **400 McAllister Street** |
|  | **San Francisco, CA 94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order
without an appearance at the case management conference if the case management
statement is filed, served and lodged in Department 212
twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each
defendant along with the complaint. All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the Alternative Dispute Resolution Information
Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the
place of filing a written response to the complaint. You must file a written
response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in (check all that apply):

  (1) ☐ Mediation

  (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

  (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

  (4) ☐ Binding judicial arbitration

  (5) ☐ Binding private arbitration

  (6) ☐ Neutral case evaluation

  (7) ☐ Other (specify):

  e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

  f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

  g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court (specify exemption):

11. Settlement conference

  ☐ The party or parties are willing to participate in an early settlement conference (specify when):

12. Insurance

  a. ☐ Insurance carrier, if any, for party filing this statement (name):

  b. Reservation of rights: ☐ Yes ☐ No

  c. ☐ Coverage issues will significantly affect resolution of this case (explain):

13. Jurisdiction

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

  ☐ Bankruptcy ☐ Other (specify):

Status:

14. Related cases, consolidation, and coordination

  a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

  ☐ Additional cases are described in Attachment 14a.

  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by (name party):

15. Bifurcation

  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action (specify moving party, type of motion, and reasons):

16. Other motions

  ☐ The party or parties expect to file the following motions before trial (specify moving party, type of motion, and issues):

CM-110 [Rev. January 1, 2007]  **CASE MANAGEMENT STATEMENT**  Page 3 of 4

| PLAINTIFF/PETITIONER: | | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | CASE NUMBER: | |

**17. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

     <u>Party</u>                     <u>Description</u>                              <u>Date</u>

   c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

   Previous case management orders in this case are *(check one)*:   ☐ none   ☐ attached as Attachment 21.

**22. Total number of pages attached *(if any)*:** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____     ▶ _____
(TYPE OR PRINT NAME)                      (SIGNATURE OF PARTY OR ATTORNEY)

_____     ▶ _____
(TYPE OR PRINT NAME)                      (SIGNATURE OF PARTY OR ATTORNEY)

                                           ☐ Additional signatures are attached

EXHIBIT B

1   Robert Mittelstaedt (State Bar No. 060359)
    ramittelstaedt@jonesday.com
2   Shawn Hanson (State Bar No. 109321)
    shanson@jonesday.com
3   David C. Kiernan (State Bar No. 215335)
    dkiernan@jonesday.com
4   JONES DAY
    555 California Street, 26th Floor
5   San Francisco, CA 94104
    Telephone:    (415) 626-3939
6   Facsimile:    (415) 875-5700

7   Attorneys for Defendant
    MERIDIAN REAL ESTATE INVESTMENT
8   COMPANY II

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13   MERIDIAN INVESTMENT                  Case No.
     MANAGEMENT, INC.,
14                                        **DECLARATION OF MUTASEM AL-
                    Plaintiff,            SHIHABI IN SUPPORT OF
15                                        DEFENDANT MERIDIAN REAL
            v.                            ESTATE INVESTMENT COMPANY II'S
16                                        NOTICE OF REMOVAL**
     MERIDIAN REAL ESTATE INVESTMENT
17   COMPANY II, a Cayman Islands Company,
     and DOES 1 through 10, inclusive.
18
                    Defendants.
19

20

21

22

23

24

25

26

27

28

SFI-583929v2                        DECLARATION OF MUTASEM AL-SHIHABI IN
                                    SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

I, Mutasem Al- Shihabi, hereby declare as follows:

1.      I am over 18 years of age and a resident of Kuwait.

2.      I am the Managing Director and a Liquidator of Meridian Real Estate Investment Company II ("FUND II"). The following is based either on my personal knowledge or upon my review of FUND II's records maintained in the ordinary course of business and, if called upon to do so, I could and would testify competently thereto.

3.      FUND II is incorporated in Cayman Islands and exists under the laws of the Cayman Islands, with its principal place of business in Kuwait.

4.      FUND II engages in passive investment activity, owning and managing shares of non-voting stock in companies incorporated in California.

5.      FUND II's officers, directors, and liquidators are citizens and residents of Kuwait, except for Mr. Ghazi Melhem, a citizen of Palestine and resident of Kuwait.

6.      FUND II's officers, directors, and liquidators direct, control, coordinate, and make all corporate decisions regarding FUND II's business activities and financial affairs in Kuwait.

7.      Directors and stockholders meetings are held in Kuwait.

8.      FUND II's books and records are kept in Kuwait and the Cayman Islands.

9.      FUND II's registered office is located at Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.

10.     Administrative services for FUND II, including accounting, reporting, and investor services, are performed in the Cayman Islands.

11.     FUND II's bank account is located in the Cayman Islands.

12.     FUND II does not have offices, employees, facilities, operational activities or tangible property in California or any other state in the United States.

<>

<>

<>

<>

<>

SI-5839252

DECLARATION OF MUTASEM AL- SHIHABI IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

1

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3        Executed this 19th day of May, 2008.

4

5

6        _____
         Mutasem Al Shihabi
7        Managing Director and Liquidator
         Meridian Real Estate Investment Company II
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SF1-583925v2



JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Meridian Investment Management, Inc., a Delaware Corporation.

## DEFENDANTS

Meridian Real Estate Investment Company II, a Caymans Island Company; and DOES 1 through 10, inclusive.

**(b)** County of Residence of First Listed Plaintiff  San Francisco
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  *N/A*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

William J. Ziegler, Doughlas A. Applegate
SEILER, EPSTEIN, ZIEGLER & APPLEGATE
101 Montgomery Street, 27th Floor
San Francisco, CA 94104

Attorneys (If Known)

Robert Mittelstaedt, Shawn Hanson, David C. Kiernan
JONES DAY
555 California Street 26th Floor
San Francisco, CA 94104

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 1332 and 1441

Brief description of cause:
Removal. Breach of Contract and Defamation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 12,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE  May 20, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                               Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.