1   Robert Mittelstaedt (State Bar No. 060359)
    ramittelstaedt@jonesday.com
2   Shawn Hanson (State Bar No. 109321)
    shanson@jonesday.com
3   David C. Kiernan (State Bar No. 215335)
    dkiernan@jonesday.com
4   JONES DAY
    555 California Street, 26th Floor
5   San Francisco, CA  94104
    Telephone:     (415) 626-3939
6   Facsimile:     (415) 875-5700

7   Attorneys for Defendant
    MERIDIAN REAL ESTATE INVESTMENT
8   COMPANY II

9

                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11

12

13  **MERIDIAN INVESTMENT**          Case No. C 08-02542 MMC
    **MANAGEMENT, INC., a Delaware**
    **Corporation**                  **DEFENDANT'S REPLY IN SUPPORT**
14                                    **OF ITS MOTION TO DISMISS**
                    **Plaintiff,**
15                                    **DATE:       July 11, 2008**
         **v.**                       **TIME:       9:00 a.m.**
16                                    **CTRM:       7, 19th Floor**
    **MERIDIAN REAL ESTATE**          **JUDGE:      Hon. Maxine M. Chesney**
17  **INVESTMENT COMPANY II, a**
    **Cayman's Island Company**
18
                    **Defendant.**
19

20              **I.  PRELIMINARY STATEMENT**

21          MIM all but concedes that its initial Complaint must be dismissed, and for good reason.

22  As shown in our opening brief (pp. 6-13), MIM's covenant of good faith and fair dealing claim

23  fails under both California and Massachusetts law.  MIM does not contest, and thus concedes,

24  that its claim fails under California law.  But it argues that Massachusetts law differs from

25  California law and would allow its claim.  MIM is mistaken.  Massachusetts and California law

26  are identical.  Accordingly, its claim should be dismissed.  As for defamation, MIM admits, as it

27  must, that its claim as currently pled is time-barred.

28          Most telling, though, is the fact that MIM, rather than standing on its initial Complaint,

1    requests leave to amend accompanied by a proposed amendment that allegedly "cure[s] any

2    shortcomings."  As shown, the amendment does no such thing.  As for the good faith and fair

3    dealing claim, MIM asks the Court to consider parol evidence to alter the terms of the contract.

4    This request is improper, as the parties' contract is fully integrated.  But far from supporting

5    MIM's claim, the parol evidence in fact defeats the claim.  And as for defamation, MIM alleges

6    that FUND II made certain statements to FUND II's shareholders and to its auditor Ernst &

7    Young, LLP.  Not only are the statements not defamatory, they are also privileged.  Once again,

8    MIM has failed to plead malice or recklessness to defeat the presumption of privilege.

9         Accordingly, FUND II respectfully requests that this Court dismiss MIM's Complaint

10   with prejudice and to deny MIM's request to amend.

11                              **II.  ARGUMENT**

12   **A.    MIM's Breach Of The Covenant Of Good Faith And Fair Dealing Should Be**

13   **Dismissed.**

14        **1.    MIM's Claim Alleging Breach Of The Covenant Of Good Faith And Fair**

15   **Dealing Fails Under Both California And Massachusetts Law.**

16        In both states,[1] a covenant of good faith and fair dealing is implied to prevent a

17   contracting party from unfairly frustrating the other party's right to receive the benefits of the

18   agreement actually made.  But as made clear by *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 329-

19   30 (Mass. 2007), a case cited by both sides, it is equally true that the covenant cannot be implied

20   (a) to contradict the express terms of a contract or the parties' reasonable expectations under the

21   _____

22        [1] Contrary to MIM's statement, FUND II does not concede that Massachusetts law
     applies.  Under California choice-of-law rules, a choice-of-law provision is unenforceable if "the
23   chosen state has no substantial relationship to the parties or the transaction and there is no other
     reasonable basis for the parties [sic] choice."  *See Nedlloyd v. Superior Court of San Mateo*
24   *County*, 834 P.2d 1148, 1151 (Cal. 1992); *ABF Capital Corp. v. Grove Prop. Co.*, 23 Cal. Rptr.
     3d 803, 810 (Cal. Ct. App. 2005).  Here, although MIM may have had an office and an employee
25   in Massachusetts, MIM is a Delaware corporation with its principal place of business in
     California, FUND II is a Cayman Islands corporation, the Advisory Agreement "was to be
26   performed in San Francisco," and all of the real estate investments acquired pursuant to the
     Advisory Agreement were located in California. (Compl. ¶¶ 1-2, 4, 6-8.)  There is no reasonable
27   basis for selecting Massachusetts law to govern the parties relationship or MIM's claims.  Thus,
     the choice-of-law provision is unenforceable and California law applies.  *See, e.g.*, *In re Crosby*
28   *& Groom*, 10 Cal. Rptr. 3d 146, 152 (Cal. Ct. App. 2004).  Nevertheless, the Court need not
     decide which law applies, as the relevant law in both states is the same.  (Def's Br. at note 4.)

1   contract, (b) "to supply terms that the parties were free to negotiate, but did not," or (c) to "create

2   rights and duties not otherwise provided for in the contract." *See also Eigerman v. Putnam Invs.,*

3   *Inc.*, 877 N.E.2d 1258, 1264 (Mass. 2007); *Uno Restaurants, Inc. v. Boston Kenmore Realty*

4   *Corp.*, 805 N.E.2d 957, 964 (Mass. 2004). Here, the covenant requested by MIM would

5   contradict the express provisions of the Advisory Agreement and the reasonable expectations of

6   the parties and add new terms that the parties were free to negotiate, but did not.

7       MIM's main case *Fortune v. Nat'l Register Co.*, 364 N.E.2d 1251 (Mass. 1977) is

8   inapposite. It held that defendant employer could not terminate an at-will employee to avoid

9   paying compensation *earned* for past services actually rendered. *Fortune*, 364 N.E.2d at 1256-

10  58. While the employment termination was effective, the employer could not avoid paying

11  previously earned compensation. Thus, the plaintiff in *Fortune* recovered commissions for sales

12  he had already made. As the Supreme Judicial Court of Massachusetts has emphasized, *Fortune*

13  stands only for the proposition that the covenant of good faith and fair dealing prevents an

14  employer from discharging an employee merely to avoid paying for past services actually

15  rendered, not for "future compensation for future services." *McCone v. New England Tel. and*

16  *Tel. Co.*, 471 N.E.2d 47, 49-50 (Mass. 1984); *Chokel*, 867 N.E.2d at 330 n.4.

17      Here, MIM seeks management fees that it alleges it would have earned *in the future* if

18  FUND II's real estate assets had not been sold—*i.e.*, "future compensation for future services."

19  Unlike the facts in *Fortune*, MIM does not allege that FUND II has failed to pay any management

20  fees earned by MIM for services rendered before the disposition of the real estate assets.

21      **2.      MIM's Remaining Arguments Are Equally Unavailing.**

22      The gravamen of MIM's Complaint is that FUND II forced MIM to sell or transfer FUND

23  II's real estate investments by directing it to do so. Yet in its Opposition (pp. 5-6), MIM now

24  argues that FUND II did not have any right under the Advisory Agreement to direct MIM to sell

25  the real estate investments. According to MIM (p. 6), "FUND II's input into investment

26  decisions was expressly limited to supervision, and it was expressly limited to supervision by the

27  Board." As an initial matter, MIM is wrong. The right to supervise includes the right to direct.

28  Black's Law Dictionary, 370 (7th Ed., abridged 2000). They are synonyms. Moreover, reading

1   the Advisory Agreement as a whole makes plain that it was the intent and within the

2   contemplation of the parties to grant FUND II the right to direct MIM respecting the disposition

3   of the real estate investments, which of course makes sense—it was FUND II's $75 million

4   investments at risk, not MIM's.[2]

5        MIM's attempt to distinguish between FUND II and its board is frivolous.  A corporation

6   is governed and managed by its Board of Directors which, in turn, is subject to shareholder vote.

7   MIM has not alleged, nor could it allege, that the decision to demand disposition of the real estate

8   assets was not made or approved by Fund II's directors and shareholders even if, as alleged, Mr.

9   Al Shihabi recommended such action to them.  And MIM's own brief shows that it shares this

10   view: MIM concedes that, at a minimum, it was subject to the direct supervision of FUND II's

11   Board.  Thus, MIM could not have properly disposed of the properties without approval from

12   FUND II's Board.

13        Even assuming that FUND II did not have the right to direct MIM to cause a sale of the

14   properties, this argument does not help MIM.  If FUND II did not have that right, then FUND II

15   could not have forced the asset sales.  Indeed, MIM concedes that it could have refused to sell the

16   properties (p. 7), with the question whether such refusal was proper deferred to a later date.

17        Lastly, MIM's allegation that FUND II somehow "forced" it to sell the properties is

18   baseless.  With no real response, MIM rehashes its argument that it was forced to sell due to

19   threatened litigation.  But the so-called "threats" on which MIM relies were not directed to MIM.

20   (Def's Br. at 11.)  And even if they were, given that the Advisory Agreement gave FUND II the

21   right to supervise MIM, FUND II would have been well within its rights to advise MIM that it

22   would take legal action if MIM did not follow its direction to preserve the remaining value of its

23   investments.  MIM's comparison of a residential constructive eviction situation to the

24   sophisticated commerical setting is absurd.  Nevertheless, just like "a tenant with no water or heat

25   does not have to succumb to the landlord's coercive tactics and vacate the premises, but can

26   instead pursue injunctive relief from a court" (MIM's Opp. at 7), MIM was under no obligation to

27

28          [2] Contrary to MIM's suggestion at page at 5, "[t]he interpretation of a contract is a question of law for the court."  *Eigerman*, 877 N.E.2d at 1263.

Defendant's Reply In Support of MTD
C 08-02542 MMC

1    "succumb" to FUND II's request and could have, instead, sought injunctive relief to protect any

2    rights it believed it had. But MIM neither sought injunctive relief nor asserted any protectable

3    rights. MIM's assertion that it was somehow "forced" to sell FUND II's properties is therefore

4    unsupported in fact, logic or law.[3]

5            MIM does not address FUND II's other arguments, because it cannot. As MIM itself

6    concedes, "MIM could have refused to sell the properties, . . . continu[ed] to manage the fund,"

7    and thus continued to receive a management fee. (MIM's Opp. at 7.) MIM's admission is both

8    the beginning and the end of the matter.

9            **3.      MIM's Request To Amend The Complaint Should Be Denied As The**

10   **Proposed Amended Complaint Fails To Cure MIM's Defective Covenant Of Good Faith**

11   **And Fair Dealing Claim.**

12           MIM's proposed amendment does not cure the Complaint's "shortcomings," and thus the

13   Court should deny MIM's request to amend.[4] *Saul v. United States*, 928 F.2d 829, 842 (9th Cir.

14   1991) ("A district court does not err in denying leave to amend where the amendment would be

15   futile . . . or where the amended complaint would be subject to dismissal.") (internal citations

16   omitted); *Shermoen v. United States*, 982 F.2d 1312, 1319-20 (9th Cir. 1992) (upholding a district

17   court's denial of leave to amend where the proposed amended complaint would not have cured

18           [3] *See, e.g.*, *Eigerman*, 877 N.E.2d at 1265-66 (citing *Willett v. Herrick*, 155 N.E. 589

19   (1927) for the proposition that "'enforcement of a legal right by legal means is not evidence of
     duress'" and thus not evidence of a breach of the covenant of good faith and fair dealing); *Hills v.

20   Chambers*, 2000 WL 1532335, at *8 (Mass. Super. Ct. Aug. 18, 2000) (granting summary
     judgment to defendant on breach of duty of good faith and fair dealing and other claims and

21   rejecting argument that release was entered under duress where plaintiff "had adequate
     alternatives," including filing suit against defendant, and holding that plaintiff's poor bargaining

22   position "does not impugn the bargain he struck"); *Capizzi v. FDIC*, No. 90-12775-S, 1993 U.S.
     Dist. LEXIS 19446, at *20, 22 (D. Mass. Mar. 9, 1993) (holding that economic duress claim

23   failed because plaintiff "failed to demonstrate that the circumstances … permitted no available
     alternatives or that his will was overbourne" where plaintiff "had the option of … initiating his

24   own affirmative suit against the defendants"); *Johnson v. International Business Machines Corp.*,
     891 F. Supp. 522 (N.D. Cal. 1995) (rejecting plaintiff's economic duress claim where plaintiff

25   "was not facing imminent bankruptcy or financial ruin" when the alleged coercion took place and
     recognizing that "merely being put to a voluntary choice of perfectly legitimate alternatives is the

26   antithesis of duress").

27           [4] MIM's request to amend accompanied by a proposed amendment is a transparent
     attempt to have this Court rule on the sufficiency of MIM's amendment without the benefit of full

28   briefing from FUND II. FUND II reserves the right to file a renewed motion to dismiss should
     the Court permit amendment.

Defendant's Reply In Support of MTD
C 08-02542 MMC

1   defects in the original complaint).  The proposed amendment alleges that FUND II was

2   "contractually committed to keep its funds under management for a minimum period of five

3   years" and that FUND II breached the covenant of good faith and fair dealing by not doing so.

4   (MIM's Opp. at 8; *see also* Proposed Am. Compl. ¶ 42.)  First, the Advisory Agreement does not

5   obligate FUND II to keep investments under management for five years or for any minimum

6   duration, and thus MIM could not reasonably have understood, or expected, that FUND II was

7   obligated to do so.  As established above, MIM cannot rely upon the implied covenant of good

8   faith and fair dealing "to supply terms that the parties were free to negotiate, but did not."

9   *Chokel*, 867 N.E.2d at 329-30.  In an attempt to get around this law, MIM asks the Court to rely

10  upon certain statements that MIM alleges FUND II made to potential investors in a Private

11  Placement Memorandum ("PPM") before entering into the Advisory Agreement.[5]  The Advisory

12  Agreement, however, is fully integrated: "[it] contains the entire agreement between the parties

13  with respect to the subject hereof and supersedes any prior written or oral agreements with respect

14  to the subject hereof."  (Advisory Agreement at ¶ 8.8.)  Thus, MIM cannot rely upon the PPM "to

15  alter the terms of [the] integrated and complete written [Advisory Agreement]."  *Hallmark*

16  *Institute of Photography, Inc. v. College-Bound Network, LLC*, 518 F. Supp. 2d 328, 331 (D.

17  Mass. 2007); *see also Alling v. Universal Mfg. Corp.*, 7 Cal. Rptr. 2d 718, 732 (Cal. Ct. App.

18  1992).  Thus, MIM's claim fails.

19          Second, far from promising investors or MIM that investments would be held for "a

20  minimum period of five years," the PPM provides only that "the average property holding period

21  to achieve the overall investment objective is estimated to be 3 to 5 years. . . . [And] [i]n no case

22  shall an investment be held for a period longer than the remaining duration of the Fund, . . .

23  [which] is expected to operate for a period of five (5) years."  (PPM at 9-10.)  Thus, if these

24  statements were construed as commitments (which they should not be) and if they were binding

25  despite the integration clause, they would at most provide an expectation that FUND II would

26  _____

27          [5] Fund II denies that the PPM attached to the Proposed Amended Complaint is the
    effective version of the PPM actually used to solicit subscriptions from Fund II's shareholders.
    However, Fund II understands that the Court must accept the allegation as true for motion to

28  dismiss purposes.

1    keep its assets under management for a period between 3 to 5 years.  Here, MIM's Proposed

2    Amended Complaint specifically alleges that FUND II's investments were held for over 3 years.

3    Specifically, MIM alleges that the San Francisco property was acquired in September 2000 and

4    deeded to the lender in March 2004 and that the San Diego properties were acquired in late 2000

5    or early 2001 and sold in 2005.[6]  (Compl. ¶¶ 8, 22, 25; Proposed Am. Compl. ¶¶ 9, 24, 27.)

6           Third, contrary to MIM's suggestion that FUND II was somehow obligated to "ride out

7    the economic cycle" until the market rebounded (Proposed Am. Compl. ¶18), the PPM states

8    expressly that "[p]roperties will be analyzed as to their ability to generate ***positive current returns***

9    rather than relying solely on future returns."  (PPM at 7 (emphasis added).)  As MIM admits,

10   "[i]n the months following September 11, 2001, the prevailing leasehold rates for class-A

11   commercial office space in San Francisco plummeted."  (Proposed Am. Compl. ¶ 10.)  FUND

12   II's San Francisco properties, thus, no longer had the "ability to generate positive current returns."

13   Accordingly, even if the PPM somehow supplied additional terms to the Advisory Agreement

14   (which it did not), the dispositions of the California real estate investments were entirely

15   consistent with the PPM's terms.  In short, by requesting that MIM sell its real estate investments

16   within 3 to 5 years after they were acquired, FUND II did not contradict or interfere with MIM's

17   alleged expectations as set forth in the PPM.

18   **B.     MIM's Defamation Claim Should Be Dismissed With Prejudice.**

19          **1.     As Pled, MIM's Defamation Claim Is Time-Barred.**

20          MIM concedes that "if California law applies to determine the statute of limitations, the

21   claim as it is currently pled cannot stand," because it is time-barred.[7]  Without any citation to

22   authority and without addressing the controlling case law cited by FUND II, MIM makes the bald

23          [6] Contrary to MIM's allegations, each San Diego property was in fact under MIM's
     management for over five years.

24          [7] Relying upon *Guess, Inc. v. Superior Court*, 222 Cal. Rptr. 79 (1986), MIM argues that
     California's two-year statute of limitations applies.  In *Guess*, however, the complaint alleged a
25   cause of action for "trade libel" and the court addressed whether the statute of limitations for
     "trade libel" was one or two years.  Here, MIM's Complaint alleged a cause of action for
26   "Slander Per Se," which has a one year statute of limitations under the plain language of
     California Code of Civil Procedure 340(c).  MIM has now clarified that, if permitted to amend its
27   complaint, its cause of action would be for trade libel, which FUND II acknowledges has a two
     year statute of limitations.  Plainly, MIM has changed course in responding to Fund II's motion to
28   dismiss precisely because the motion was well-founded.

1    assertion that Massachusetts supplies the statute of limitations.  But, because this case was filed in

2    California, California's statute of limitations governs MIM's claims.  *See* Def's Br. p. 13, n.9;

3    *Deutsch v. Turner Corp.*, 324 F.3d 692, 717 (9th Cir. 2003).  This remains true even if

4    Massachusetts law were to provide, as MIM argues, the substantive law pursuant to the choice-of-

5    law provision in the Advisory Agreement.  *Ashland Chem. Co. v. Provence*, 181 Cal. Rptr. 340,

6    341 (Cal. Ct. App. 1982).  Accordingly, MIM's claim is time-barred and should be dismissed

7    with prejudice.[8]

8         **2.    MIM's Request To Amend The Complaint Should Be Denied Because The**

9    **Alleged Statements Are Not Defamatory And The Proposed Amended Complaint Fails To**

10   **Sufficiently Plead Malice To Overcome The Common Interest Privilege.**

11        The allegedly defamatory statements are not reasonably susceptible of a defamatory

12   meaning under either California or Massachusetts law.  Under Massachusetts law,[9] the statement

13   must "'tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any

14   considerable and respectable segment in the community,'" *Amrak Prod, Inc. v. Morton*, 410 F.3d

15   69, 72 (1st Cir. 2005) (citations omitted), and under California law, the statement must disparage

16   the quality of MIM's services, *Fed. Agr. Mortg. Corp. v. It's a Jungle Out There, Inc.*, 2005 WL

17   3325051 (N.D. Cal. Dec. 7, 2005).  Here, MIM's proposed amendment alleges that, in responding

18   to inquiries made by FUND II's shareholders regarding FUND II's operations and to Ernst &

19   Young, LLP ("E&Y") in connection with E&Y's audit work and preparation of FUND II's

20   financial statements, FUND II "falsely blamed MIM for the inaction and inability to close the

21   operations of FUND II."  (Proposed Am. Compl. ¶¶ 54-59.)  These statements simply do not hold

22   MIM up to scorn, hatred, ridicule or contempt in the minds of a considerable and respectable

23   segment in the community or disparage the quality of MIM's services.  *Amrak*, 410 F.3d at 72-73;

24   *Federal Agr. Mortg. Corp.*, 2005 WL 3325051, at *27.

25        Putting aside whether the statements are defamatory, MIM's claim still fails because its

26   _____

          [8] MIM's claim is also time-barred by Massachusetts' three-year statute of limitations.

27        [9] MIM presumes that Massachusetts law applies to its defamation claim.  Although FUND
     II disagrees that Massachusetts law applies, because MIM's proposed claim fails under both
28   California and Massachusetts law, this Court need not decide which law applies.

1   allegations do not overcome the privilege. Defamatory statements that are made without actual

2   malice or recklessness to a person sharing a common interest are privileged, and thus not

3   actionable. *Tynecki v. Tufts Univ. School of Dental Med.*, 875 F. Supp. 26, 35 (D. Mass. 1994).

4   If the privilege is apparent from the face of the complaint, the communication is presumed to be

5   privileged and the burden shifts to the plaintiff to plead actual malice or recklessness to rebut the

6   presumption. *Tynecki*, 875 F. Supp. at 35; *McCone*, 471 N.E. 2d at 51 (affirming motion to

7   dismiss defamation claims where the predicate communication served the speaker's legitimate

8   business interest where "the plaintiffs have alleged no facts at all to prove that such publication

9   was made recklessly" and, therefore, failed "to overcome the company's conditional privilege").

10  In California, plaintiff must plead malice to rebut the presumption. *Martin v. Kearney*, 124 Cal.

11  Rptr. 281, 281-83 (Cal. Ct. App. 1975).

12          It is beyond dispute that FUND II had a common interest with its shareholders regarding

13  the operations of FUND II. And FUND II and E&Y certainly held a common interest regarding

14  the preparation of FUND II's financial statements. MIM's proposed amendment, however, fails

15  to plead actual malice or recklessness to overcome the privilege. Indeed, it does not include

16  either of those words much less allege that FUND II was motivated by hatred or ill will towards

17  the plaintiff or that the statements were made in bad faith. Because MIM has pled no facts

18  showing actual malice or recklessness to rebut the presumptive privilege, MIM's allegations fail.

19                                      **III. CONCLUSION**

20          For the foregoing reasons, the Complaint should be dismissed with prejudice and MIM's

21  request to amend should be denied.

22
    Dated: June 27, 2008                        Respectfully submitted,
23
                                                 Jones Day
24
                                                 By: /s/ David C. Kiernan
25                                                   David C. Kiernan

26                                               Counsel for Defendant
                                                 MERIDIAN REAL ESTATE INVESTMENT
27                                               COMPANY II

28

Defendant's Reply In Support of MTD
C 08-02542 MMC