IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERIDIAN INVESTMENT MANAGEMENT, INC.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MERIDIAN REAL ESTATE INVESTMENT COMPANY II,<br><br>　　　　Defendant / | No. C-08-2542 MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING COMPLAINT; AFFORDING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT; VACATING HEARING** |

　　　Before the Court is defendant Meridian Real Estate Investment Company II's ("Fund II") Motion to Dismiss, filed June 6, 2008. Plaintiff Meridian Investment Management, Inc. ("MIM") has filed opposition, to which Fund II has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers, VACATES the hearing scheduled for July 11, 2008, and rules as follows.

**A. First Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing)**

　　　In its First Cause of Action, MIM alleges Fund II breached the implied covenant of good faith and fair dealing found in the parties' Advisory Agreement, dated September 1, 2000. In the Advisory Agreement, MIM agreed to provide to Fund II management and other services pertaining to real estate assets Fund II would acquire, and Fund II agreed to

pay MIM a management fee, to be calculated based on the value of the assets MIM managed for Fund II. (See Compl. Ex. A at 3 (providing Fund II "shall pay [MIM] an annual fee equal to one percent (1%) of the overall value of [Fund II's] assets under management").) MIM alleges that Fund II subsequently purchased three properties in California, acting on MIM's advice. (See Compl. ¶ 7.) MIM also alleges that several years thereafter, Fund II directed MIM to sell the properties because, MIM alleges, Fund II no longer wished to pay MIM a fee. (See Compl. ¶¶ 11, 17, 20, 22, 25.) After the properties were sold, MIM no longer earned a management fee. (See Compl. ¶ 25.) Based on such allegations, MIM asserts it was deprived of its contractual expectation of management fees. (See id.)

Under Massachusetts law,[1] every contract "is subject to an implied covenant of good faith and fair dealing." See Chokel v. Genzyme Corp., 867 N.E. 2d 325, 329 (Mass. 2007). "A breach occurs when one party violates the reasonable expectations of the other." Id. The implied covenant of good faith and fair dealing, however, does not "supply terms that the parties were free to negotiate, but did not, nor does it create rights and duties not otherwise provided for in the contract." See id. (internal citation and quotation omitted).

MIM cites no authority, either from Massachusetts or any other jurisdiction, supporting the theory that a property owner is prohibited, in light of the covenant of good faith and fair dealing implied in a management services contract, from selling its property if wishes to do so to avoid continuing to pay management fees. Nor does the complaint identify any language in the Advisory Agreement that suggests such a limitation is implicit in the particular contract at issue. Indeed, as Fund II correctly observes, the Advisory Agreement includes no language that provides for a minimum period in which Fund II is required to retain ownership of its properties, or in any other manner purports to limit Fund

---

[1] The Advisory Agreement provides that it is to be "governed and construed in accordance with the laws of the Commonwealth of Massachusetts." (See Compl. Ex. A ¶ 8.7.) In its reply, Fund II asserts, in a footnote, that such provision is "unenforceable," for the reason that the parties had "no reasonable basis for selecting Massachusetts law to govern the parties' relationship." (See Def.'s Reply at 2:26-28.) Because this argument is raised for the first time in the reply, the Court does not consider it.

1  II's ability to divest itself of its properties.  Under such circumstances, the implied covenant
2  cannot be used to create such an additional duty on the part of Fund II.  See id.  Further, as
3  noted, the Advisory Agreement provides a formula for determination of MIM's fee, such
4  formula being based solely on the value of Fund II's holdings.  The implied covenant of
5  good faith and fair dealing cannot be used to "supply" a term that Fund II is required to pay
6  MIM by a different formula.  See id.

7  MIM's reliance on Fortune v. National Cash Register Co., 364 N.E. 2d 1251 (Mass.
8  1977) is unavailing.  In Fortune, the Supreme Judicial Court of Massachusetts held that an
9  employer breaches the implied covenant of good faith and fair dealing in an employment
10 contract providing for "at will" employment, by terminating the employee "at a moment
11 chosen solely to avoid paying money due an employee for work already performed by him."
12 See Chokel, 867 N.E. 2d at 330 n. 4 (interpreting Fortune).  Here, by contrast, MIM does
13 not allege Fund II failed to pay MIM for work MIM performed; rather, MIM seeks fees for
14 work it could have performed in the future, had Fund II continued to own the properties.

15 Accordingly, the First Cause of Action is subject to dismissal.

**B.  Second Cause of Action (Slander)**

17 The instant complaint was filed March 28, 2008.  In its Second Cause of Action, MIM
18 alleges that an officer of Fund II, on August 25, 2003, told Fund II shareholders that MIM
19 had "mismanaged the assets of Fund II, that the shareholders' investment in Fund II was
20 lost, and that MIM had overcharged the fund with management fees while investing in
21 speculative investments that had lost value that could not be recouped."  (See Compl.
22 ¶ 37.)  MIM alleges that Fund II knew such statements were false, (see Compl. ¶ 38), and
23 that MIM lost business it would have received from some of the shareholders as a result of
24 the false statements, (see Compl. ¶¶ 42-44).

25 Fund II argues the Second Cause of Action is barred by the statute of limitations.
26 The Court agrees.  Whether, as MIM asserts, Massachusetts' three-year statute of
27 limitations applies, see Mass. Gen. Laws ch. 260, § 4, or, as Fund II asserts, California's
28 shorter statute of limitations applies, see Guess, Inc. v. Superior Court, 176 Cal. App. 3d

473, 478-79 (1986) (holding claim for "trade libel" subject to two-year statute of limitations), the Second Cause of Action, being solely based on a statement made more than three years before the complaint was filed, is barred by the statute of limitations.

Accordingly, the Second Cause of Action is subject to dismissal.

**C. Leave to Amend**

In its opposition, MIM requests leave to amend if the Court finds the initial complaint deficient and submits a proposed First Amended Complaint ("proposed FAC").[2]

With respect to its claim for breach of the implied covenant, MIM, in its proposed FAC, alleges it reasonably expected the term of the Advisory Agreement would be a minimum of five years. Such expectation is, according to MIM, based on language in a "Private Placement Memorandum" ("PPM"), dated March 20, 2000, that Fund II allegedly gave to potential investors, (see proposed FAC ¶¶ 6, 28, 29), and in particular, on a statement therein that "[t]he Fund is expected to operate for a period of five (5) years," (see proposed FAC Ex. A at 10.) According to the proposed FAC, Fund II directed MIM to sell the properties prior to Fund II's having operated for five years, thus "depriving [MIM] of the management fee that it was contractually obligated to receive." (See proposed FAC ¶ 42.)

To the extent MIM may be alleging the statements in the PPM are contractual promises to MIM, such allegation is unavailing, because the Advisory Agreement includes an express provision that it "contains the entire agreement between the parties with respect to the subject hereof and supersedes any prior written or oral agreements with respect to the subject hereof." (See Compl. Ex. A at 9.)[3] To the extent MIM may be alleging the statements in the PPM may be considered for purposes of interpreting the Advisory Agreement, such allegation likewise is unavailing, because MIM points to no ambiguity in the Advisory Agreement, whether on the face of the contract or arising from the application of its terms, regarding Fund II's ability to sell its properties. See Robert

---

[2] The proposed FAC is Exhibit A to the Declaration of Douglas A. Applegate.

[3] As noted, the Advisory Agreement was executed on September 1, 2000, and the PPM is dated May 1, 2000.

4

Industries, Inc. v. Spence, 291 N.E. 2d 407, 409 (Mass. 1973) (holding where agreement is "in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purposes of elucidating, but not contradicting or changing its terms"). Consequently, the proposed amendment of MIM's breach of implied covenant claim would be futile.

With respect to its slander claim, MIM, in its proposed FAC, alleges that Fund II made additional false statements about MIM "within the last year." (See proposed FAC ¶ 56.) Specifically, MIM alleges that when Fund II shareholders have asked Fund II for information on the status of Fund II, e.g., why "final audited statements" have not been prepared, Fund II has stated that MIM is responsible "for the inaction and inability to close the operations." (See proposed FAC ¶¶ 55, 56.) MIM alleges such statements are false, because Fund II, not MIM, is responsible for any failure to complete the final statements, in that MIM has provided all information requested by the outside auditors preparing the "final financial statements" and has otherwise "cooperated" with the auditors, while Fund II has "refused to sign the financial statements or audit reports, and [has] declined to provide information requested by [the auditors]." (See proposed FAC ¶¶ 54, 55.) A cause of action based on such allegations would not be barred by the applicable statute of limitations.[4] Consequently, the proposed amendment of MIM's slander claim would not be futile.[5]

//

---

[4] In its proposed amended slander claim, MIM continues to allege a cause of action based on the assertedly false statement made in 2003. MIM's slander claim, to the extent it is based on such 2003 statement, is, as discussed above, barred by the statute of limitations.

[5] In its reply, Fund II argues that the statements sought to be added are not defamatory. In that MIM has not had an opportunity to respond to such argument, and because the authority on which Fund II relies does not necessarily foreclose a response, the Court will not address the argument at this time. Fund II further argues that MIM's proposed FAC does not sufficiently allege malice. Assuming, arguendo, malice is required, the proposed FAC sufficiently alleges it. (See proposed FAC ¶ 57 (alleging subject statements "were known by Fund II to be false"); Tynecki v. Tufts Univ. Sch. of Dental Med., 875 F. Supp. 26, 35-36 (D. Mass. 1994) (holding allegation defendant made knowingly false statement sufficient to allege malice).

Accordingly, the Court will afford MIM the opportunity to file a First Amended Complaint to allege a slander claim based on the above-referenced assertedly false statements made by Fund II "within the last year."

**CONCLUSION**

For the reasons stated above:

1. Fund II's motion to dismiss is hereby GRANTED;

2. The complaint is hereby DISMISSED, with leave to amend as set forth above; and

3. MIM's First Amended Complaint, if any, shall be filed no later than July 25, 2008.

**IT IS SO ORDERED.**

Dated: July 9, 2008

MAXINE M. CHESNEY
United States District Judge