1   Robert Mittelstaedt (State Bar No. 060359)
    ramittelstaedt@jonesday.com
2   Shawn Hanson (State Bar No. 109321)
    shanson@jonesday.com
3   David C. Kiernan (State Bar No. 215335)
    dkiernan@jonesday.com
4   JONES DAY
    555 California Street, 26th Floor
5   San Francisco, CA  94104
    Telephone:    (415) 626-3939
6   Facsimile:    (415) 875-5700

7   Attorneys for Defendant
    MERIDIAN REAL ESTATE INVESTMENT
8   COMPANY II

9

                 UNITED STATES DISTRICT COURT

10

               NORTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| **MERIDIAN INVESTMENT MANAGEMENT, INC., a Delaware Corporation** | **Case No. C 08-02542 MMC** |
| **Plaintiff,** | **DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS, MOTION TO STRIKE, AND SUPPORTING MEMORANDUM** |
| **v.** | |
| **MERIDIAN REAL ESTATE INVESTMENT COMPANY II, a Cayman's Island Company** | **DATE:**      September 26, 2008<br>**TIME:**      9:00 a.m.<br>**CTRM:**     7, 19th Floor<br>**JUDGE:**    Hon. Maxine M. Chesney |
| **Defendant.** | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO THE COURT AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, defendant Meridian Real Estate Investment Company II ("FUND II") will move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss with prejudice the First Amended Complaint ("Amended Complaint") filed by plaintiff Meridian Investment Management, Inc. ("MIM") and to strike MIM's request for punitive damages.

**RELIEF REQUESTED**

Defendant requests an order dismissing with prejudice MIM's Amended Complaint for failure to state a claim and, in the alternative, striking MIM's request for punitive damages.

**MEMORANDUM OF POINTS AND AUTHORITIES**

On July 9, 2008, this Court dismissed MIM's complaint, but granted MIM leave to file only the defamation claim set forth in MIM's proposed amended complaint.  (Order at 5-6.) MIM's Amended Complaint seeks damages, including punitive damages, for defamation based on three communications allegedly made by FUND II.  (Am. Compl. ¶¶ 30-40.)

First, MIM relies on the general allegation that, within the last year, when FUND II's shareholders inquired about the status of FUND II's operations, FUND II "falsely blamed MIM for the inaction and inability to close FUND II's operations."  (*Id.* ¶¶ 30-31.)  MIM does not identify the actual statement made.  Second, MIM relies on an email that it alleges FUND II sent to Ernst & Young ("E&Y") on March 6, 2007.[1]  (*Id.* ¶¶ 32-33 and Ex. C to Am. Compl., attached as Ex. 1; Kiernan Decl. Ex. 4.)  The email was sent in response to an email from E&Y requesting approval for FUND II's financial statements and explains why approval has been withheld.  (*See* Ex. 1.)  Third, MIM relies on an article published on May 28, 2008 in "a Kuwaiti newspaper of general circulation" regarding Al Mal Investment Company ("Al Mal"), one of among other

---

[1] The allegation that the email was sent from or on behalf of FUND II is taken as true only for purposes of this motion.

1    shareholders of FUND II.  (*Id.* ¶¶ 34-40 and Ex. D to Am. Compl., attached as Ex. 2.)  The article

2    includes statements attributed to Mr. Al-Kharafi, chairman of Al Mal, at a meeting of the general

3    assembly of Al Mal.

4        MIM's Amended Complaint fares no better than its first complaint.  None of the

5    statements is susceptible to a defamatory meaning.  Moreover, MIM's claim based upon

6    statements attributed to Mr. Al-Kharafi is not properly before this Court because MIM did not

7    seek leave to amend its complaint to include such a claim.  Finally, punitive damages are

8    unavailable to MIM for defamation.  Accordingly, MIM is entitled to an order dismissing the

9    complaint with prejudice and striking MIM's request for punitive damages.

## I.    ARGUMENT

### A.    MIM's First Amended Complaint Fails To State A Claim.

12       To survive a motion to dismiss, MIM must allege "enough facts to state a claim to relief

13   that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).[2]  The

14   factual allegations must be specific enough to "raise a right to relief above the speculative level."

15   *Id.* at 1964-65.  As the Supreme Court observed, Federal Rule of Civil Procedure 8(a)(2) requires

16   a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement

17   to relief.  *Id.* at 1965 n.3.  Therefore, "plaintiff's obligation to provide the 'grounds' of his

18   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

19   the elements of a cause of action will not do."  *Id.* 1964-65 (internal citation omitted).  In short,

20   the pleading must do something more than state "facts that merely creates a suspicion [of] a

21   legally cognizable right of action."  *Id.* at 1965.

### 1.    The Alleged Statement To Shareholders Is Not Actionable

#### (a)    MIM fails to identify an allegedly defamatory statement

24   Under Massachusetts law,[3] MIM must allege sufficient facts to show that the defendant (i)

---

[2] The Supreme Court repudiated the familiar language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 127 S. Ct. at 1968-69.

[3] According to MIM, Massachusetts law provides the substantive law for MIM's defamation claim.  (MIM's Opp. at p. 3, Doc. #10 (citing choice of law provision in the Advisory Agreement, which governs the parties' relationship); *id.* at 8 (stating that Massachusetts law

1   published (ii) a false and defamatory statement of fact (iii) of and concerning plaintiff (iv) that is

2   capable of damaging plaintiff's reputation in the community and (iv) that caused economic loss or

3   is actionable without proof of economic loss. *Damon v. Moore*, 520 F.3d 98, 103 (1st Cir. 2008)

4   (affirming dismissal of defamation claim under Massachusetts law). Consistent with *Twombly*

5   and Federal Rule of Civil Procedure 8, a complaint alleging defamation "must afford defendant

6   sufficient notice of the communication complained of to enable him to defend himself" and allow

7   the Court to evaluate whether the communication conveys a defamatory meaning. *Croslan v.*

8   *Housing Authority*, 974 F. Supp. 161, 169 (D. Conn. 1997) (internal citation omitted). "General

9   assertions regarding speakers and subject matter are not sufficient." *Id.* The defendant and court

10  are entitled to know of the actual language challenged as defamatory. *Id.* In *Croslan*, for

11  example, plaintiff alleged that defendant "made numerous public statements charging [her] with

12  misappropriating [certain] funds … and charging her with general professional incompetence in

13  the conduct of her position." *Id.* The Court dismissed the complaint on the ground that such

14  general allegations without the actual wording used are insufficient as a matter of law. *Id.*

15        MIM's pleading does precisely what the rule against general assertions forbids. It makes

16  the general allegation that, "[c]ontinuously until the present time, on specific dates and times

17  known only to FUND II but on occasions within the last year, when the shareholders of FUND II

18  have inquired about the status of the fund, Mr. Al-Shihabi [on behalf of FUND II] … falsely

19  blamed MIM for the inaction and inability to close the operations of FUND II."[4] (Am. Compl. ¶¶

20  30-31.) As in *Croslan*, MIM does not identify a specific statement it alleges is defamatory.

21  MIM's "failure to plead the defamation action with sufficient specificity makes it impossible for

22  [FUND II] to identify and present, and for the court to evaluate, specific defenses which might be

23  available for each particular statement." *Croslan*, 974 F. Supp. at 170-71. Accordingly, the claim

24  should be dismissed on this ground alone.

25  _____

(continued…)

26  applies to its defamation claims); Order at 5, n.5 (applying Massachusetts law).)

27      [4] MIM rehashes its allegation that Mr. Al-Shihabi made defamatory statements to
    shareholders in 2003. This Court held that such statements are barred by the statute of

28  limitations. (7/7/08 Order at 3-4.)

1

(b)    The Alleged statement to shareholders is not defamatory

2    On a motion to dismiss, the court decides as a matter of law "whether [the]

3    communication is reasonably susceptible of a defamatory meaning." *Amrak Productions, Inc. v.*

4    *Morton*, 410 F.3d 69, 72 (1st Cir. 2005). "[I]naccuracy by itself does not make a statement

5    defamatory." *Yohe v. Nugent*, 321 F.3d 35, 41-42 (1st Cir. 2003). Rather, "[a] communication is

6    susceptible to defamatory meaning if it would tend to injure the plaintiff's reputation, or 'hold the

7    plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and

8    respectable segment in the community.'" *Damon*, 520 F.3d at 103. "[T]he communication 'must

9    be interpreted reasonably,' and can only be ruled defamatory if it would lead 'a reasonable reader

10   to conclude that it conveyed a defamatory meaning." *Damon*, 520 F.3d at 104; *Foley*, 533 N.E.2d

11   at 197. A court must "examine the statement in its totality in the context in which it was uttered

12   or published . . . not merely a particular phrase or sentence." *Foley*, 533 N.E.2d at 197. The

13   words must be given their natural and ordinary meaning. *Id.* "Forced or strained construction of

14   the statement will not suffice to state a claim for defamation." *Damon*, 520 F.3d at 105.

15   At most, the First Amended Complaint can be read to allege that FUND II told its

16   shareholders that MIM had prevented FUND II from closing its operations. No reasonable

17   listener, however, could find such a statement standing alone defamatory. It does not charge

18   MIM with professional incompetence, dishonesty, malfeasance, unethical behavior or a general

19   lack of qualification, skill or fitness to serve as an investment advisor. Without more, such a

20   statement is not actionable: it does not "describe any conduct or characteristic of the plaintiff

21   incompatible with his successful carrying on [his particular] occupation." *Bander v. Metro. Life*

22   *Ins. Co.*, 47 N.E.2d 595 (Mass. 1943); *Alba v. Sampson*, 690 N.E.2d 1240, 1241-43 (Mass. Ct.

23   App. 1998) (dismissing claim on summary judgment because words "did not describe any

24   conduct or characteristic incompatible with the plaintiff's successful performance of his job").

25

26

27

28

Defendant Motion To Dismiss
C 08-02542 MMC

1

2

### 2.    E&Y Email Is Not Susceptible To Defamatory Meaning

3

MIM's claim based on the email to E&Y fares no better because no statement in that

4

email, whether read in context or in isolation, conveys a defamatory meaning. The email string

5

shows that it was sent in response to an email that E&Y, "at Meridian's request," had sent to

6

FUND II requesting approval for the financial statements. In the first two paragraphs, the email

7

explains that FUND II has withheld approval because point no. 6 in the statements categorize the

8

payment of $2 million as a consulting fee. The email further explains that they attempted to

9

resolve the issue with MIM by arranging for Al Mal to pay the $2 million directly to MIM. The

10

email then expresses the opinion that "it was obvious to us that till now Meridian has not

11

addressed this issue with you," the "issue" clearly referring to the efforts to resolve with MIM the

12

outstanding financial statements.

13

It is black letter law that opinions are not actionable unless they are both derogatory and

14

based on undisclosed defamatory facts. *See Dulgarian v. Stone*, 420 Mass. 843, 850 (1995).

15

Opinions based on disclosed facts or assumed nondefamatory facts, even if such facts are false,

16

are not actionable, no matter how unreasonable or derogatory they may be. *Lyons v. Globe*

17

*Newspaper Co.*, 612 N.E.2d 1158, 1161-65 (Mass 1993); *Pritsker v. Brudnoy*, 452 N.E.2d 227,

18

228-231 (Mass. 1983) (holding that statements that plaintiffs are "unconscionably rude and

19

vulgar" and that they are "PIGS" were not actionable); *Myers v. Boston Magazine Co.*, 403

20

N.E.2d 376, 378-79 (Mass. 1980) (holding that statement that plaintiff was "enrolled in a course

21

for remedial speaking" was not actionable because it was a statement of opinion). Here, no

22

reasonable reader could read the opinion that "it was obvious to us that till now MIM ha[d] not

23

addressed this issue with [E&Y]" as derogatory, especially read in context. The email simply

24

expresses the belief that, given E&Y's request for approval for the financial statements, it is

25

obvious that MIM had not told E&Y that FUND II and MIM were still resolving the issue. And

26

as demonstrated above, the email outlines the facts upon which the opinion is based. *Yohe*, 321

27

F.3d at 41-42 (holding that a statement of belief is an opinion, which is not actionable where facts

28

upon which opinion was based were disclosed).

1    Even if the statement were one of fact and not opinion, it would not be actionable.

2    Tellingly, MIM does not identify a defamatory statement in the email.  Read as a whole, the email

3    states neither explicitly nor implicitly that MIM was incompetent, dishonest, unethical or lacked

4    the qualification, skill or fitness to serve as an investment advisor.  Finally, given that E&Y

5    would know whether MIM had in fact addressed such issues with it and that Legg Mason was

6    hired to monitor MIM's management (Am. Compl. ¶ 18), the email could not have harmed

7    MIM's reputation with either party.  *See, e.g., Grande*, 129 N.E.2d at 899-900 (holding that

8    statements blaming plaintiff for delays to completion of parties' contractual undertaking were

9    "not reasonably capable of being understood in a defamatory sense"); *see also Colby*

10   *Haberdashers, Inc. v. Bradstreet Co.*, 166 N.E. 550, 552 (Mass. 1929) (dismissing claim where,

11   even assuming "that [defendant] intended and hoped to hurt the plaintiff, there is nothing to

12   justify a finding that the words he used would be considered derogatory" by others and noting

13   that "[i]t is the meaning to the world, to persons other than speaker and subject of the speech,

14   which is material in libel or slander"); *Amrak*, 410 F.3d at 73 (affirming dismissal where

15   statements viewed in context were not susceptible to a defamatory meaning).

16   Attempting to create a defamatory meaning where none exists, MIM provides its own

17   strained interpretation of the words through innuendo, alleging that the email "suggests that MIM

18   gave bad advice to FUND II" and that "MIM was the cause of FUND II's 'inability to sign the

19   financial statement as directors.'"  Because the email is "incapable of a defamatory meaning," as

20   discussed above, "innuendo will not make them so."  *Flotech, Inc. v. E.I. Du Pont De Nemours*

21   *Co.*, 627 F. Supp. 358, 369 n.4 (D. Mass. 1985) (internal citation omitted).  MIM's innuendo,

22   which places an unnatural construction on the email, "cannot be used to enlarge the natural

23   meaning of the words actually used."  *Id.* at 367-69 (rejecting plaintiff's defamation claim where

24   a paragraph-by-paragraph review of the allegedly defamatory press release failed to identify "a

25   statement that a reasonable juror [would] fairly read in context as defamatory"); *Ricci v. Crowley*,

26   127 N.E.2d 652, 653 (Mass. 1955) (affirming demurrer where "[n]othing defamatory may be

27   inferred from the use of such words" because "innuendo . . . cannot add anything to the meaning

28   of the words"); *Tobin v. Boston Herald-Traveler Corp.*, 87 N.E.2d 116, 121 (Mass. 1949)

Defendant Motion To Dismiss
C 08-02542 MMC

1    (reversing trial court's determination that plaintiff stated a defamation claim where a conclusion

2    to the contrary "would be placing a strained and unnatural construction on the writing to impute

3    that meaning to it"); *Pond v. General Electric Co.*, 256 F.2d 824, 827-28 (9th Cir. 1958)

4    (affirming dismissal of defamation claim where plaintiff alleged that the statement "was worded

5    as it was because of personal malice and ill will," but where "[a] detailed study of the writing

6    proves that there is nothing defamatory contained therein"); *Lorentz v. R.K.O Pictures, Inc.*, 155

7    F.2d 84, 87 (9th Cir. 1946) (dismissing claim where the it was not the "fair or reasonable import

8    [of the statements] that appellant was incompetent in his work, or that he was unwilling to

9    cooperate or unmindful of the corporation's desire to do business at a profit, or that he refused to

10   cooperate to reduce costs" and rejecting plaintiff's attempt "to attach such meanings by

11   innuendo" because "such inferences could not fairly be drawn from the statements").

12   ### 3.    The Al-Kharafi Statements Are Not Actionable

13        MIM's claim based upon Al-Kharafi's reported statements in the article attached at

14   Exhibit 2 is not properly before this Court.  The Court's July 9, 2008 Order granting leave to

15   amend afforded "MIM the opportunity to file a First Amended Complaint to allege a slander

16   claim based on the above-referenced assertedly false statements . . . ."  (Order at 6.)  The "above-

17   referenced assertedly false statements" are the statements set forth in the proposed First Amended

18   Complaint that was attached to MIM's opposition to FUND II's motion to dismiss.  (*Id.* at 5.)

19   The proposed complaint did not contain any allegations regarding Mr. Al-Kharafi.  Accordingly,

20   MIM's claim is "a nullity, since [MIM] never sought or received leave of Court to file it."  *Quiles*

21   *v. City of New York*, 2002 WL 31886117, *1 (S.D.N.Y. 2002); *Daly v. Viacom, Inc.*, 238 F. Supp.

22   1118, 1124 (N.D. Cal. 2002) (dismissing claim, inter alia, because "plaintiff did not seek leave of

23   the court nor did she receive Viacom's consent before adding this claim").

24        Any motion for leave to amend should be denied, as such an amendment would be subject

25   to dismissal.  *Saul v. United States*, 928 F.2d 829, 842 (9th Cir. 1991); *Shermoen v. United States*,

26   982 F.2d 1312, 1319-20 (9th Cir. 1992).  First, contrary to MIM's allegations, the article makes

27   clear that FUND II did not make the statements.[5]  *Crown Paper Liquidating Trust v. Am. Int'l*

28

---

[5] Although unnecessary for the Court's consideration, contrary to MIM's unsupported

1  *Group, Inc.*, 2007 WL 4207943, at *2 (N.D. Cal. Nov. 27, 2007) ("[The court] may disregard

2  factual allegations if such allegations are contradicted by the facts established by reference to

3  exhibits attached to the complaint.")  The article states that Mr. Al-Kharafi was speaking to the

4  "general assembly for Al Mal Investment Company" as chairman of its board and elected

5  member of Al Mal Investment Company.  Indeed, the article does not expressly or implicitly state

6  that Mr. Al-Kharafi worked for, or was speaking on behalf of, FUND II.

7       Second, MIM misquotes the article in an attempt to create a defamatory meaning.

8  Paragraphs 36 and 38 allege that Mr. Al-Kharafi stated "that MIM 'had also been referred to the

9  general prosecutor."  The article, however, does not attribute that statement to Mr. Al-Kharafi.  It

10  is clear that the statement was that of the article's author, Hasan Malak, not Mr. Al-Kharafi.

11  Indeed, Mr. Malak was careful to distinguish his words from Mr. Al-Kharafi's.  Where Mr. Al-

12  Kharafi made a statement, Mr. Malak included the introductory words, "Loay Jasim Al-Kharafi

13  said," "He announced," "He said," "Al-Kharafi attributed," "He mentioned," "He pledged," "Al-

14  Kharafi stated," "He indicated," "He explained," "Al-Kharafi repeated," and "He gave

15  assurances."  No such signal precedes the statement regarding the prosecutor.

16       Paragraph 39 similarly misquotes the article.  It alleges that Mr. Al-Kharafi said that

17  "FUND II['s] Board 'assigned an accounts auditor to perform a comprehensive evaluation and

18  audit of all funds and assets and to reinventory and isolate each' and that the 'violations were

19  discovered by this process.'"  That is not what the article says.  The article states: "Mr. Al-

20  Kharafi said: 'When we received the company, we assigned an accounts auditor . . . ."  When read

21  with the rest of the article, it is clear that "the company" and "we" refer to Al Mal, not FUND II.

22       Third, no reasonable reader could read the article as a whole and conclude that it conveys

23  a defamatory meaning.  Contrary to MIM's suggestion, it neither charges MIM with a crime nor

24  alleges that MIM was arrested for a crime.  Instead, it states only that MIM was referred to the

25  

26  (continued…)

27  conclusion, FUND II's corporate documents show that Al-Kharafi is not and has never been a
managing director or officer of FUND II.  (Ex. 3, Decl. of Mark Neo and Attachment A, which is
a certified copy of FUND II's Register of Directors and Officers that reflects the names and

28  addresses of FUND II's directors and officers since its incorporation in August 2000).

Defendant Motion To Dismiss
C 08-02542 MMC

1  general prosecutor.  Based on this statement, a reader would not reasonably conclude that MIM

2  had committed a crime.  As far as the reader knows, MIM was referred to the prosecutor for

3  questioning as a witness with respect to the previous chairman's actions.  Moreover, the article

4  cannot, as MIM alleges, be read to accuse "MIM of having acted negligently, dishonestly and

5  fraudulently."  (Am. Compl. ¶ 39.)  Rather, the focus of Mr. Al-Kharafi's reported statements was

6  the conduct of the previous chairman of Al Mal, not MIM.  Specifically, Mr. Al-Kharafi

7  reportedly stated that "the previous chairman of the board" of Al Mal had been referred to a

8  general prosecutor, for among other things, "hiding of two million dollars from a fund controlled

9  by [Al Mal]."  Nowhere does the article state that Mr. Al-Kharafi said or even suggested that

10  MIM acted in concert with the previous chairman or engaged in any misconduct.  It would be

11  unreasonable as a matter of law for a reader to reach such a conclusion.

12  **B.      MIM Is Not Entitled To Punitive Damages.**

13         Under Massachusetts law, a plaintiff cannot under any circumstances recover punitive

14  damages in a defamation action.  Mass. Gen. Laws Ch. 231, § 93; *Stone v. Essex County*

15  *Newspapers, Inc.*, 330 N.E.2d 161 (Mass. 1975).  Accordingly, MIM's request for punitive

16  damages should be stricken from the First Amended Complaint.

## II.   CONCLUSION

         For the foregoing reasons, the complaint should be dismissed with prejudice.

Dated: August 21, 2008                    Respectfully submitted,

                                          Jones Day


                                          By:    /s/  David C. Kiernan
                                                 David C. Kiernan

                                          Counsel for Defendant
                                          MERIDIAN REAL ESTATE INVESTMENT
                                          COMPANY II

# EXHIBIT 1

**From:** Pinky Anand [mailto:pinky@almal.com.kw]
**Sent:** Tuesday, March 06, 2007 3:04 PM
**To:** 'Stan.Willis@ey.com '
**Cc:** 'Albright, Alan'; 'Jay D. Matthes'
**Subject:** RE: Meridian's Financial Statements

Dear Mr. Willis,

Reference to your emails of February 14 and 23, the reason for delay of such approval is point no. 6 in the consolidated statements of Fund II, in particular, the payment of US$2million as a consultant fee. We were ill-advised to have such amounts categorized that way. We had attempted prior to your year end to ratify the situation with Meridian Management that Al Mal Investment Company (as a shareholder) would incur the US$2million directly to Meridian and prefer to follow that route for payments.

We have attempted prior to December 2006 with Meridian Management to ratify that situation by direct payment of Al Mal to Meridian without it being passed through the fund. We at Al Mal are ready to transfer US$2million to Meridian directly and opt to ratify the classification of your comments on the financial statements. It was obvious to us that till now Meridian has not addressed this issue with you and hence our inability to sign the financial statements as directors.

Our lawyers have been instructed to contact their legal counsel to address certain disputes that they have presented to us recently. Hence, we are reluctant to transfer the above mentioned mis-classified amount, without all other uncertainties are legally addressed. We cannot guarantee the speed at which, such negotiations might take between the legal counterparts and we have instructed our lawyers to push management of release of all cash without dispute in the funds, to be distributed to the shareholders.

In order to benefit the shareholders and unless you advise otherwise, the US$2million in note 6, could be classified not as expenses, but as a receivable from a shareholder (i.e. Al Mal) or better yet omitted from the notes altogether if the closing of the fund is affected and Al Mal has transferred the cash.

Again, your feedback of what is in the best interest of shareholder is appreciated and we re-affirm our commitments and ability to pay US$2million mentioned in note 6 to Meridian, in the very near future.

Best Regards,


Mutasem Al Shihabi
Deputy General Manager

**From:** Stan.Willis@ey.com [mailto:Stan.Willis@ey.com]
**Sent:** Friday, February 23, 2007 7:52 AM
**To:** alsagerm@yahoo.com; mutasem@almal.com.kw; issamkhalaf@gmail.com; iyaqoub@almal.com.kw
**Cc:** KKTailo@aol.com
**Subject:** Meridian's Financial Statements


Gentlemen,

Please note that I have made several attempts at Meridian's request to contact you. We have been waiting for many months (since the end of September) in hopes of receiving your approval (in the form of a signed letter of representation) so that we could finally issue the Financial Statements. I have never ran into a situation like this where the Director refuses to perform their responsibilities of reviewing and approving financial statements.

We can not issue without your approval and my firm is pressing for me to close this out. I fear that soon, lack of approval could lead to non-issue. Meridian has fulfilled everything on their end to get these statements issued. It is now up to you to provide approval.

Please let me know if you have any questions or let me know if you need me to send the LOR and draft financial statements again.

Regards,

Stan J. Willis | Ernst&Young, LLP

Global Asset Management Practice

560 Mission Street, Suite 1600 | San Francisco, CA 94105-2907

| ☎ : +1 415.894.8810 | 7: +1 866.362.5898 | ✉ stan.willis@ey.com


**Any U.S. tax advice contained in the body of this e-mail was not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code or applicable state or local tax law provisions.**

EXHIBIT 2

Issue 12570 – Date of Publication: 05/28/2008
Date of Printing: 07/06/2008
Print

# Al-Kharafi: "Al-Mal" Building a Conservative Policy to Manage Risks

By: Hasan Malak

The regular general assembly for the Al Mal Investment Company approved the recommendation of the board of directors for the following: withholding distribution of dividends for the fiscal year ending 12/31/2007, issuing bonds within the limits of paid-up capital, provided they are made available for general subscription, compensating the board of directors according to the conditions for these bond issues and in compliance with law and the Company's bylaws.

The assembly, with an attendance of 71.78%, certified the compiled financial statements, after discharging the members of the board from liability and hearing the reports of the board of directors and the account auditors.

The chairman of the board and elected member Loay Jasim Al-Kharafi said that work conditions in 2007 differed from previous years, which requires the board to adjust policies and strategies and perform an internal housecleaning to provide a fair value for the shareholders.

He announced that the company would institute a conservative policy to guard against risks before seeking out profit opportunities by implementing the following:

1.    Confirm ownership of the Company's assets and the fair value of these assets.

2.    Arrive and an accurate and confirmed number for the Company's liabilities and there there is no increase or decrease in these liabilities.

3.    Ensure that an accurate picture is provided for any possible liabilities the Company may incur in the future, whether in the form of contractual liabilities or legal matters pertaining to the prior period.

The Company's income amounted to 17.9 million dinars, in comparison to 14.7 million dinars for 2006.  He said that the net profit was 4.8 million dinars, in comparison to 5.6 million dinars in 2006, with a share profit rate of 10 fils per share.  Returns on shareholder rights were 6%.

Market Factors

Al-Kharafi attributed the decrease in net profit, despite the increase in income, to the inclusion of costs and other burdens which totaled 6.2 million dinars, including 2.3 million dinars from the devaluation of investments for economic and operational reasons and from market conditions.  There was a total loss of 3.9 million dinars related to the enactment of the board's policies.   He said it was necessary to show the true value of the Company's investments and endeavor to show actual liabilities and whether these debts were required to be including in the accounting for the previous fiscal period.

Use of Internal Resources

He said that the Company would endeavor to use its internal resources to strengthen its financial position and service shareholder interests, hence the recommendation to withhold dividends for fiscal year 2007.  Al-Kharafi that he would continue looking for promising investment opportunities by focusing on a variety of economic sectors, such as real estate, industry, energy, and services, in addition to developing and restructuring current investments.

He mentioned that the board would build its investment strategy by focusing on direct investment and arranging funding structures for its operations, in addition to building a network of local and international strategic alliances through its parent company and the parent company's subsidiaries and affiliates.  He pledged to achieve greater returns and superior performance by virtue of the professional experience of the board and executive administration.

In this light, Al-Kharafi announced the referral of the previous chairman of the board to the general prosecutor for certain excesses, has he put it, and the hiding of two million dollars from a fund controlled by the Company which was disposed of in a manner violating the purposes of the fund.

Al-Kharafi stated in a press announcement on the margins of the general assembly: "We referred the matter before the end of the last session of the National Assembly.  We will present the matter of immunity before the current assembly in its first session.  The general prosecutor has initiated an investigation in this case and will determine if it warrants proceeding with a trial.  Referral to the court would require presenting the question of immunity before the National Assembly."

He indicated that the Public Institute for Social Security owns more than 50% of the fund and that the total value of the fund was 22 million dollars.  The amount required will be determined by the prosecutor.

The fund was founded in the United States (Cayman) by Meridian Investment Management, which has also been referred to the general prosecutor.

He said that the case was like any other legal procedure for the collection of international funds.

On the discovery of the violations, Al-Kharafi said: "When we received the company, we assigned an accounts auditor to perform a comprehensive evaluation and audit of all funds and assets and to reinventory and isolate each.  The violations were discovered by this process.  The Meridian violation was the first to be discovered, but there are others.

He explained that there is a difference between an administration violation and a criminal violation, but whereas the fund is owned by the government, the matter may go beyond just an administrative violation.  He added that the Public Institute for Social Security had previously managed the fund's performance and that there had not been any fears of these transgressions.

Al-Kharafi repeated: "There are two million dollars missing from the fund; doesn't the matter justify determining whether this amount was disposed of for purposes not tied to the fund? We presented this to the prosecutor for his enquiry into the purposes for this behavior.  Does this represent a liability and is it considered a violation or not?  Likewise, there should be an enquiry into the party that benefited from the transaction of this money."

He gave assurances that if any further violations are discovered, they will be referred to the general prosecutor so as to ensure the Company's right, whether the case is criminal or civil.

EXHIBIT 3

Robert Mittelstaedt (State Bar No. 060359)
ramittelstaedt@jonesday.com
Shawn Hanson (State Bar No. 109321)
shanson@jonesday.com
David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendant
MERIDIAN REAL ESTATE INVESTMENT
COMPANY II

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERIDIAN INVESTMENT MANAGEMENT, INC., a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>MERIDIAN REAL ESTATE INVESTMENT COMPANY II, a Cayman Islands Company<br><br>Defendant. | Case No. C 08-02542 MMC<br><br>DECLARATION OF MARK NEO |

I, Mark Neo, MAKE OATH AND SAY as follows:

1.      I am over 18 years of age and a resident of the Cayman Islands.  I have been employed as an attorney by Maples and Calder, Cayman Islands legal counsel for Meridian Real Estate Investment Company II ("FUND II"), since 2007.  The following is based on my review of the relevant records maintained by Maples and Calder's associated administrative services company, Maples Corporate Services Limited (**"MCS"**), and is true to the best of my knowledge, information and belief.

2.    MCS provides the registered office of FUND II. As part of that function, MCS maintains certain corporate records of FUND II (the "Minute Book"). The Minute Book includes Fund II's Register of Directors and its constitutional documents, as well as a collection of the directors' and members' resolutions and minutes of FUND II, to the extent these are provided to MCS by FUND II.

3.    Under the Cayman Islands Companies Law, a company is obliged to keep at its registered office a register containing the names and addresses of its directors and officers ("Register of Directors"). MCS maintains FUND II's Register of Directors based on information provided to it by the FUND II, including any minutes or resolutions of FUND II which show the appointment or removal of directors.

4.    Attachment A is a certified copy of the original Register of Directors and Officers of FUND II since its incorporation in August 2000. That document bears my signature, and I certify that it is an exact duplicate of the original.

5.    Attachment A:

(a)    was made at or near the time of the occurrence of the matters set forth therein or from information transmitted by a person with knowledge of those matters;

(b)    was kept in the course of the regularly conducted activity; and

(c)    was made by and in the course of the regularly conducted activity as a regular practice.

6.    Loay Jasim Al-Kharafi is not listed in the Register of Directors as a director or officer of FUND II. I have reviewed the Minute Book of FUND II and I have seen nothing in the minutes and resolutions provided by FUND II which suggests that Mr Al-Kharafi has ever been appointed as a director or officer of FUND II.

I declare under penalty of perjury under the laws of the United States of America and under the laws of the Cayman Islands that the foregoing is true and correct.

SWORN to at _George Town_           )
_Cayman Islands_                       )
this 21st day of August 2008          )
before me                             )                 _signature_
                                      )            Mark Neo
                                      )
                                      )

_signature_
Notary Public

Maples Corporate Services Limited
Client Ref:275959-000
Incorp: 102917

# REGISTER OF DIRECTORS AND OFFICERS
## OF
## MERIDIAN REAL ESTATE INVESTMENT COMPANY II

21 August, 2008

| Name | Address | Office Held | Date Elected | Date Resigned | Date Registrar Notified Appointment | Resignation |
|---|---|---|---|---|---|---|
| Gareth Griffiths | PO Box 309 GT Ugland House South Church Street George Town Grand Cayman, Cayman Islands | Director | 25 Aug 2000 | 25 Aug 2000 | 6 Sep 2000 | 6 Sep 2000 |
| Mohammed Hassem Al-Sager | c/o Al-Mal Kuwait Company P.O. Box 26308 Safat 13124 Kuwait | Director | 25 Aug 2000 | 25 Aug 2003 | 8 Aug 2008 | 8 Aug 2008 |
| Abdul Monsen Mohammed Hayat | PO Box 26308 Safat 13124 Kuwait | Chairman | 6 Sep 2000 | | 11 Oct 2000 | |
| | | Director | 25 Aug 2000 | 8 May 2002 | 6 Sep 2000 | 10 Jul 2002 |
| Mutasem H. Al-Shihabi | PO Box 26308 Safat 13124 Kuwait | Managing Director | 6 Sep 2000 | 8 May 2002 | 10 Oct 2000 | 10 Jul 2002 |
| | | Director | 18 Sep 2002 | 31 May 2008 | 3 Oct 2002 | 8 Aug 2008 |
| Ghazi Mihem | c/o Al Mal Kuwait Company P.O. Box 26308 Safat 13124 Kuwait | Director | 25 Aug 2003 | 7 Aug 2008 | 26 Sep 2003 | 15 Aug 2008 |
| Mustafa Bohamad | c/o Al-Mal Kuwait Company P.O. Box 26308 Safat 13124 Kuwait | Director | 25 Aug 2003 | 7 Aug 2008 | 26 Sep 2003 | 15 Aug 2008 |
| Khaled Al Shamali | c/o Al Mal Kuwait Company P.O. Box 26308 Safat 13124 Kuwait | Director | 25 Aug 2003 | 7 Aug 2008 | 26 Sep 2003 | 15 Aug 2008 |
| Mureed Al Sultan | c/o Al Mal Kuwait Company P.O. Box 26308 Safat 13124 Kuwait | Director | 25 Aug 2003 | 7 Aug 2008 | 26 Sep 2003 | 15 Aug 2008 |

CERTIFIED A TRUE COPY OF THE ORIGINAL

For and on behalf of
Maples Corporate Services Limited
PO Box 309, Ugland House
Grand Cayman,
Cayman Islands, KY1-1104
Date 2 August 2008

"Attachment A"

EXHIBIT 4

1  Robert Mittelstaedt (State Bar No. 060359)
   ramittelstaedt@jonesday.com
2  Shawn Hanson (State Bar No. 109321)
   shanson@jonesday.com
3  David C. Kiernan (State Bar No. 215335)
   dkiernan@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA  94104
   Telephone:    (415) 626-3939
6  Facsimile:     (415) 875-5700

7  Attorneys for Defendant
   MERIDIAN REAL ESTATE INVESTMENT
8  COMPANY II

9

                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11

12
   **MERIDIAN INVESTMENT**            Case No. C 08-02542 MMC
13 **MANAGEMENT, INC., a Delaware**
   **Corporation**                    **DECLARATION OF DAVID C.**
14                                     **KIERNAN IN SUPPORT OF**
                **Plaintiff,**         **DEFENDANT'S MOTION TO**
15                                     **DISMISS AND SUPPORTING**
        v.                             **MEMORANDUM OF POINTS AND**
16                                     **AUTHORITIES**
   **MERIDIAN REAL ESTATE**
17 **INVESTMENT COMPANY II, a**        **DATE:        September 26, 2008**
   **Cayman's Island Company**         **TIME:        9:00 a.m.**
18                                     **CTRM:        7, 19th Floor**
                **Defendant.**         **JUDGE:       Hon. Maxine M. Chesney**
19

20         I, David C. Kiernan, declare as follows:

21         1.        I am a member of the State Bar of California and an associate with Jones Day,

22 counsel of record for Defendant Meridian Real Estate Investment Co. II in the above-styled

23 action.  I make this declaration in support of Defendant's Motion to Dismiss and Memorandum of

24 Points and Authorities in support thereof.  The following is based on my personal knowledge,

25 and, if called as a witness, I could and would competently testify thereto.

26         2.        Exhibit 1 to Defendant's Motion to Dismiss and Memorandum of Points and

27 Authorities in support thereof is a true and correct copy of Exhibit C attached to MIM's First

28 Amended Complaint (Docket No. 15).

   SFI-590382v1                                      Kiernan Declaration
                                                     C 08-02542 MMC

1        3.      Exhibit 2 to Defendant's Motion to Dismiss and Memorandum of Points and

2    Authorities in support thereof is a true and correct copy of Exhibit D attached MIM's First

3    Amended Complaint.

4        4.      Exhibit 3 to Defendant's Motion to Dismiss and Memorandum of Points and

5    Authorities in support thereof is a true and correct copy of the declaration of Mark Neo and

6    Attachment A, which is a Certified copy of FUND II's Register of Directors and Officers.

7        I declare under penalty of perjury under the law of the United States that the foregoing is

8    true and correct.  Executed August 21, 2008.

9

10

11                      By:    /S/  David C. Kiernan

                        David C. Kiernan

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28