Robert Mittelstaedt (State Bar No. 060359)
ramittelstaedt@jonesday.com
Shawn Hanson (State Bar No. 109321)
shanson@jonesday.com
David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700

Attorneys for Defendant
MERIDIAN REAL ESTATE INVESTMENT
COMPANY II

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MERIDIAN INVESTMENT MANAGEMENT, INC., a Delaware Corporation**<br><br>**Plaintiff,**<br><br>v.<br><br>**MERIDIAN REAL ESTATE INVESTMENT COMPANY II, a Cayman's Island Company**<br><br>**Defendant.** | Case No. **C 08-02542 MMC**<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>DATE:     September 26, 2008<br>TIME:     9:00 a.m.<br>CTRM:    7, 19th Floor<br>JUDGE:   Hon. Maxine M. Chesney |

   Before this Court is defendant Meridian Real Estate Investment Co. II's ("FUND II") motion to dismiss with prejudice the First Amended Complaint filed by plaintiff Meridian Investment Management, Inc.'s ("MIM"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative, motion to strike MIM's request for punitive damages.  Having read and considered the papers filed in support of this motion, the Court rules as follows:

1.     MIM's First Cause of Action, alleging Business Defamation, is dismissed for failure to state a claim.  MIM's Amended Complaint seeks damages, including punitive damages, for defamation based on three communications allegedly made by FUND II.  (Am. Compl. ¶¶ 30-40.)

1   Under Massachusetts law, MIM must allege sufficient facts to show that the defendant (i) published (ii) a false and defamatory statement of fact (iii) of and concerning plaintiff (iv) that is capable of damaging plaintiff's reputation in the community and (iv) that caused economic loss or is actionable without proof of economic loss. *Damon v. Moore*, 520 F.3d 98, 103 (1st Cir. 2008) (affirming dismissal of defamation claim under Massachusetts law).  On a motion to dismiss, the court decides as a matter of law "whether [the] communication is reasonably susceptible of a defamatory meaning." *Amrak Productions, Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005). "[I]naccuracy by itself does not make a statement defamatory." *Yohe v. Nugent*, 321 F.3d 35, 41-42 (1st Cir. 2003).  Rather, "[a] communication is susceptible to defamatory meaning if it would tend to injure the plaintiff's reputation, or 'hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community.'" *Damon*, 520 F.3d at 103. "[T]he communication 'must be interpreted reasonably,' and can only be ruled defamatory if it would lead 'a reasonable reader to conclude that it conveyed a defamatory meaning." *Damon*, 520 F.3d at 104; *Foley*, 533 N.E.2d at 197.  A court must "examine the statement in its totality in the context in which it was uttered or published . . . not merely a particular phrase or sentence." *Foley*, 533 N.E.2d at 197.  The words must be given their natural and ordinary meaning. *Id.*  "Forced or strained construction of the statement will not suffice to state a claim for defamation." *Damon*, 520 F.3d at 105.

Opinions are not actionable unless they are both derogatory and based on undisclosed defamatory facts. *See Dulgarian v. Stone*, 420 Mass. 843, 850 (1995).  Opinions based on disclosed facts or assumed nondefamatory facts, even if such facts are false, are not actionable, no matter how unreasonable or derogatory they may be. *Lyons v. Globe Newspaper Co.*, 612 N.E.2d 1158, 1161-65 (Mass 1993); *Pritsker v. Brudnoy*, 452 N.E.2d 227, 228-231 (Mass. 1983) (holding that statements that plaintiffs are "unconscionably rude and vulgar" and that they are "PIGS" were not actionable); *Myers v. Boston Magazine Co.*, 403 N.E.2d 376, 378-79 (Mass. 1980) (holding that statement that plaintiff was "enrolled in a course for remedial speaking" was not actionable because it was a statement of opinion).

First, MIM relies on the general allegation that, within the last year, when FUND II's

shareholders inquired about the status of FUND II's operations, FUND II "falsely blamed MIM for the inaction and inability to close FUND II's operations." (*Id.* ¶¶ 30-31.) Consistent with Federal Rule of Civil Procedure 8, a complaint alleging defamation "must afford defendant sufficient notice of the communication complained of to enable him to defend himself" and allow the Court to evaluate whether the communication conveys a defamatory meaning. *Croslan v. Housing Authority*, 974 F. Supp. 161, 169 (D. Conn. 1997) (internal citation omitted). "General assertions regarding speakers and subject matter are not sufficient." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Because MIM does not identify the actual statement made that it alleges is defamatory, it has not afforded FUND II "sufficient notice of the communication complained of to enable him to defend himself" or to allow the Court to evaluate whether the communication conveys a defamatory meaning. *Id.* Accordingly, the claim based upon communications to FUND II's shareholders is dismissed. *Id.* ("General assertions regarding speakers and subject matter are not sufficient.").

But even if the allegation were sufficient, MIM's claim would still fail, as no reasonable listener could find such a communication standing alone as susceptible to a defamatory meaning. *Bander v. Metro. Life Ins. Co.*, 47 N.E.2d 595 (Mass. 1943) (dismissing claim where statement does not "describe any conduct or characteristic of the plaintiff incompatible with his successful carrying on [his particular] occupation."); *Alba v. Sampson*, 690 N.E.2d 1240, 1241-43 (Mass. Ct. App. 1998).

Second, MIM relies on an email that it alleges FUND II sent to Ernst & Young ("E&Y") on March 6, 2007. (*Id.* ¶¶ 32-33.) The email was sent in response to an email that E&Y, "at Meridian's request," had sent to FUND II requesting approval for financial statements. In the first two paragraphs, the email explains that FUND II withheld approval because of the categorization of a certain payment. The email further explains that FUND II attempted to resolve the issue with MIM. The email then expresses FUND II's belief that "it was obvious to us that till now Meridian has not addressed this issue with you," the "issue" being FUND II's efforts to resolve with MIM the outstanding financial statements. No reasonable reader could read the email as conveying a derogatory meaning. It does not charge MIM with professional

1  incompetence, dishonesty, malfeasance, unethical behavior or a general lack of qualification, skill
2  or fitness to serve as an investment advisor.  And as demonstrated above, the email outlines the
3  facts upon which the opinion is based.  *Yohe*, 321 F.3d at 41-42 (holding that a statement of belief
4  is an opinion, which is not actionable where facts upon which opinion was based were disclosed);
5  *Grande*, 129 N.E.2d at 899-900 (holding that statements blaming plaintiff for delays to
6  completion of parties' contractual undertaking were "not reasonably capable of being understood
7  in a defamatory sense"); *see also Colby Haberdashers, Inc. v. Bradstreet Co.*, 166 N.E. 550, 552
8  (Mass. 1929) (dismissing claim where, even assuming "that [defendant] intended and hoped to
9  hurt the plaintiff, there is nothing to justify a finding that the words he used would be considered
10 derogatory" by others and noting that "[i]t is the meaning to the world, to persons other than
11 speaker and subject of the speech, which is material in libel or slander"); *Amrak*, 410 F.3d at 73
12 (affirming dismissal where statements viewed in context were not susceptible to a defamatory
13 meaning).
14         Third, and finally, MIM relies on an article published on May 28, 2008 in "a Kuwaiti
15 newspaper of general circulation" regarding Al Mal Investment Company ("Al Mal"), one of
16 among other shareholders of FUND II.  (*Id.* ¶¶ 34-40.)  The article includes statements attributed
17 to Mr. Al-Kharafi, chairman of Al Mal, at a meeting of the general assembly of Al Mal.  As an
18 initial matter, a claim based on these statements is not properly before this Court.  The Court's
19 July 9, 2008 Order granting leave to amend afforded "MIM the opportunity to file a First
20 Amended Complaint to allege a slander claim based on the above-referenced assertedly false
21 statements . . . ."  (Order at 6.)  The "above-referenced assertedly false statements" are the
22 statements set forth in the proposed First Amended Complaint that was attached to MIM's
23 opposition to FUND II's motion to dismiss.  (*Id.* at 5.)  The proposed complaint did not contain
24 any allegations regarding Mr. Al-Kharafi.  Accordingly, MIM's claim is "a nullity, since [MIM]
25 never sought or received leave of Court to file it."  *Quiles v. City of New York*, 2002 WL
26 31886117, *1 (S.D.N.Y. 2002); *Daly v. Viacom, Inc.*, 238 F. Supp. 1118, 1124 (N.D. Cal. 2002).
27         Any motion for leave to amend would be denied, however, as such an amendment would
28 be subject to dismissal.  *Saul v. United States*, 928 F.2d 829, 842 (9th Cir. 1991); *Shermoen v.*

1  *United States*, 982 F.2d 1312, 1319-20 (9th Cir. 1992).  First, contrary to MIM's allegations, the
2  article makes clear that FUND II did not make the statements.  *Crown Paper Liquidating Trust v.*
3  *Am. Int'l Group, Inc.*, 2007 WL 4207943, at *2 (N.D. Cal. Nov. 27, 2007) ("[The court] may
4  disregard factual allegations if such allegations are contradicted by the facts established by
5  reference to exhibits attached to the complaint.")  Second, no reasonable reader could read the
6  article as a whole and conclude that it conveys a defamatory meaning.  Contrary to MIM's
7  suggestion, the article neither charges MIM with a crime nor alleges that MIM was arrested for a
8  crime.  Nothing in the article can reasonably be read as accusing MIM of having acted
9  negligently, dishonestly or fraudulently.

10  2.     Alternatively, MIM's request for punitive damages is hereby stricken, as punitive
11  damages are unavailable for defamation.  Mass. Gen. Laws Ch. 231, § 93; *Stone v. Essex County*
12  *Newspapers, Inc.*, 330 N.E.2d 161 (Mass. 1975).

## CONCLUSION

For the reasons stated, FUND II's motion to dismiss is **GRANTED**.  The complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: _____

By: _____
The Honorable Maxine M. Chesney