IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERIDIAN INVESTMENT MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MERIDIAN REAL ESTATE INVESTMENT COMPANY II, <br><br> Defendant / | No. C-08-2542 MMC <br><br> **ORDER DENYING IN PART AND DEFERRING RULING IN PART ON DEFENDANT'S MOTION TO DISMISS AND TO STRIKE; VACATING HEARING** |

Before the Court is defendant Meridian Real Estate Investment Company II's ("Fund II") Motion to Dismiss and to Strike, filed August 21, 2008. Plaintiff Meridian Investment Management, Inc. ("MIM") has filed opposition, to which Fund II has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers, VACATES the hearing scheduled for September 26, 2008, and rules as follows.

**A. Motion to Dismiss**

The sole cause of action alleged in the First Amended Complaint ("FAC") is a claim of business defamation.

**1. Statements Made to Fund II Shareholders**

MIM's claim is based in part on statements made by Mutasem Al-Shihabi ("Al-

Shihabi"), Fund II's managing director, to Fund II shareholders. Fund II argues the claim, to the extent it is based on such statements, is subject to dismissal.

First, Fund II argues MIM has failed to provide sufficient notice of the basis for the claim. The Court disagrees. In particular, MIM has identified the speaker (Fund II's managing director Al-Shihabi), (see FAC ¶ 30), the listeners (shareholders who inquired about the status of Fund II), (see id.), the time at which such statements were made, to the best of MIM's knowledge, ("on specific dates and times known only to Fund II but on occasions within the last year"), (see id.), the nature of the statements (that Fund II could not be closed because of MIM's "inaction"), (see id.) and why such statements were false (Al-Shihabi has "refus[ed] to cooperate in the preparation of the final accounting statements," whereas MIM provided all "information and records requested" by outside auditors), (see FAC ¶¶ 26-27). See Fed. R. Civ. P. 8(a) (providing plaintiff must allege "short and plain statement of the claim"); cf. Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers, 542 F. 2d 1076, 1085 (9th Cir. 1976) (holding claim alleging defendant made "false and malicious statements to the news media" about plaintiffs was subject to dismissal for failure to state claim, where "nature of the statements [was] not disclosed").

Second, Fund II argues the statements are not reasonably susceptible of a defamatory meaning. The Court disagrees. Under either California or Massachusetts law,[1] the statements can reasonably be understood as an assertion that MIM, which provided "management services" to Fund II, (see FAC ¶ 8), is an incompetent manager because it has failed to take the necessary action to close Fund II. See, e.g., Stoneking v. Briggs, 254 Cal. App. 2d 563, 573 (1967) (affirming jury verdict in favor of plaintiff union officer, where false statements at issue therein did not contain express assertion of mismanagement but "sting of [defendant's] accusation" was plaintiff had failed to act in best interest of membership and was incompetent); Bander v. Metropolitan Life Ins. Co., 47 N.E. 2d 595,

---

[1] As discussed below, the parties disagree as to whether California or Massachusetts law governs the defamation claim.

600-01 (Mass. 1943) (holding "test for slander per se with respect to trade or profession" met where assertedly false statement describes "conduct or characteristic of the plaintiff incompatible with his successfully carrying on [his] occupation").

Accordingly, Fund II has failed to show MIM's business defamation claim, to the extent such claim is based on the above-referenced statements to shareholders, is subject to dismissal.

### 2. Email to Auditor

MIM's claim is based in part on an email dated March 6, 2007, sent by Al-Shihabi to Fund II's outside auditor and copied to two other individuals.

In the subject email, Al-Shihabi responded to the outside auditor's question as to why Al-Shihabi, as director of Fund II, had yet to review and approve Fund II's financial statements.  (See FAC Ex. C.)  In his response, Al-Shihabi stated the "reason for delay of such approval" was that a two million dollar payment by Fund II had been "categorized" on the statements as a "consultant fee," that Fund II had been "ill-advised to have such amounts categorized that way," that the payment should be categorized as a "receivable from a shareholder" rather than as "expenses," and that Fund II had "attempted prior to [ ] year end to ratify the situation with [MIM] that Al Mal Investment Company (as a shareholder) would incur the US$2 million directly to [Fund II]."  (See id.)  MIM alleges that the recipients of the email would understand Fund II to have asserted that MIM, Fund II's manager, gave "bad advice" to Fund II and that MIM, rather than Fund II's director, is responsible for Fund II's inability to approve the financial statements.  (See FAC ¶ 33.) Fund II argues the claim, to the extent it is based on said email, is subject to dismissal.

First, Fund II argues the statements therein are non-actionable opinion.  Contrary to Fund II's argument, the above-referenced assertions by Al-Shihabi can be understood as fact, i.e., a statement that can be proved true or false.  See Dodds v. American Broadcasting Co., 145 F. 3d 1053, 1065 (9th Cir. 1998) (holding statement is "factual in nature" where it is "susceptible of being proved true or false").  In particular, it can be proved that MIM gave Fund II advice as to how the two million dollar payment should be

3

categorized, and that any such advice was improper in light of the circumstances and/or applicable accounting standards.  Further, it can be proved that Fund II attempted to "ratify the situation" with MIM by having a specified shareholder, Al Mal Investment Fund ("Al Mal"), pay the sum to Fund II.  At a minimum, because the statements are "reasonably susceptible of an interpretation which implies a provably false assertion of action fact, . . . the jury may be called upon to determine whether such an interpretation was in fact conveyed."  See Kahn v. Bower, 232 Cal. App. 3d 1599, 1608 (1991).

Second, Fund II argues the statements therein are not reasonably susceptible of a defamatory meaning.  The Court finds the statements could be understood as defamatory, specifically, that the recipients of the email could reasonably understand Fund II to have asserted that MIM provided incompetent management services, both by providing bad advice as to classification of payments and by refusing to work with Fund II's director to resolve his inability to sign Fund II's financial statements.  The Court cannot say, based on the face of the complaint, that no reasonable recipient of the email would understand the email in the manner alleged by MIM.  See id. at 1608 (holding where statement can be interpreted as conveying defamatory meaning, "it is for the jury to determine whether a defamatory meaning was in fact conveyed"); King v. Globe Newspaper Co., 512 N.E. 2d 241, 249 (Mass. 1987) (holding where statement can be interpreted as conveying defamatory meaning, "it presents a question for the trier of fact").

Accordingly, Fund II has failed to show that MIM's claim, to the extent such claim is based on the above-referenced email, is subject to dismissal.

**3. Newspaper Article**

MIM's claim is based in part on statements in a newspaper article printed on July 6, 2008.  (See FAC Ex. D.)  According to MIM, the article was published in "ALQABAS, a Kuwaiti newspaper of general circulation, widely read in the investment community in Kuwait, and posted in the Internet where it is available for viewing worldwide, and where it is regularly read by Kuwaiti nationals who are living in the United States."  (See FAC ¶ 35.)

The article states that Al-Shihabi, the "chairman of the board and elected member"

of Al Mal,[2] had "announced the referral of the previous chairman of the board to the general prosecutor for certain excesses, has [sic] he put it, and the hiding of two million dollars from a fund controlled by the Company which was disposed of in a manner violating the purposes of the fund." (See FAC Ex. D.) The article further states, "The fund was founded in the United States (Cayman) by [MIM], which has also been referred to the general prosecutor." (See id.) Fund II argues that the claim, to the extent it is based on the article, is subject to dismissal.[3]

First, Fund II argues that no reasonable reader of the article could conclude the article conveys a defamatory meaning. The Court disagrees. When read in context, the statement that MIM was "referred to the general prosecutor" could reasonably be understood as an assertion that MIM had some criminal involvement with the "hiding of two million dollars" from Fund II. To the extent Fund II argues that a reader could understand such statement to convey a non-defamatory meaning, e.g., that MIM was referred to the prosecutor for questioning as a witness, such argument is premature at the pleading stage. See Kahn, 232 Cal. App. 3d at 1608; King, 512 N.E. 2d at 249.

Second, Fund II argues that because the article does not explicitly identify Al-Shihabi as the source of the statement that MIM has been "referred to the general prosecutor," and, further, does not allege that Al-Shihabi was speaking on behalf of Fund II, MIM cannot establish a claim against Fund II based on the article. The Court disagrees. The FAC alleges that Al-Shihabi was the source of the above-referenced statements in the article and that, in making such statements, Al-Shihabi was "speaking on [Fund II's] behalf." (See FAC ¶ 36.) Whether MIM can prove such allegations is a matter appropriate for resolution

---

[2] MIM alleges that Al Mal is the "sponsor and lead investor for Fund II." (See FAC ¶¶ 5-6.)

[3] Fund II also argues that because MIM, in requesting leave to amend when opposing Fund II's motion to dismiss the initial complaint, did not request leave to add a defamation claim based on the above-referenced article, the Court should treat such claim as a "nullity." (See Def.s Mot. at 8:19-20.) The Court disagrees. Because Fund II has not filed a responsive pleading and MIM had not previously filed an amended complaint, MIM was allowed to amend "as a matter of course." See Fed. R. Civ. P. 15(a)(1)(A).

1 on summary judgment or at trial, not on a motion to dismiss.

2 Accordingly, Fund II has failed to show MIM's claim, to the extent such claim is
3 based on the above-referenced article, is subject to dismissal.

4 **B.  Motion to Strike**

5 In its prayer for relief, MIM seeks an award of punitive damages.  (See FAC, prayer,
6 ¶ 2.)

7 Fund II observes that MIM, in its opposition to Fund II's motion to dismiss the initial
8 complaint, asserted Massachusetts law governed MIM's defamation claim.[4]  (See Pl.'s
9 Opp. to Def.'s Mot. to Dismiss, filed June 20, 2008, at 8:5-6 ("[U]nder Massachusetts law,
10 which applies here, the statute of limitations for slander or libel is three years.").)[5]  Under
11 Massachusetts law, punitive damages are not available as a remedy in a defamation
12 action.  See Stone v. Essex County Newspapers, Inc., 330 N.E. 2d 161, 169 (Mass. 1975)
13 ("We reject the allowance of punitive damages in this Commonwealth in any defamation
14 action, on any state of proof . . . .").  Relying on Massachusetts law, Fund II seeks an order
15 striking the prayer for punitive damages.

16 In opposition, MIM argues California law should apply because, at the time the
17 allegedly defamatory statements were made, MIM had closed its Massachusetts office and
18 was operating exclusively in California; thus, according to MIM, the injury incurred in
19 California.  Under California law, a plaintiff is not prohibited from seeking punitive damages
20 as a remedy in a defamation action.  See Wilbanks v. Wolk, 121 Cal. App. 4th 883, 906
21 (2004) (holding plaintiff can recover punitive damages in defamation action upon "clear and
22 convincing" proof of malice).

23 In its reply, Fund II argues MIM should be judicially estopped from arguing the
24 defamation claim is governed by California law.

25

---

26 [4]In the initial complaint, MIM referred to its defamation claim as a claim for "slander
27 per se."

28 [5]Fund II sought dismissal of the defamation claim alleged in the initial complaint on the ground it was barred by the statute of limitations.

6

The Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." See Hamilton v. State Farm Fire & Casualty Co., 270 F. 3d 778, 783 (9th Cir. 2001).  Here, the Court, in ruling on Fund II's motion to dismiss the initial complaint, did not rely on or accept MIM's argument that Massachusetts law applied to its defamation claim.  Rather, with respect to the issue of the statute of limitations, the Court found MIM's defamation claim, as pleaded in the initial complaint, was time-barred under both Massachusetts and California law.  (See Order, filed July 9, 2008, at 3:25 - 4:3.)  Further, in rejecting Fund II's argument that MIM's proposed amended defamation claim would be futile on account of a failure to sufficiently allege malice, the Court made such determination based on federal pleading requirements. See Fed. R. Civ. P. 9(b) (providing "malice . . . may be alleged generally").[6]  Under such circumstances, no sufficient basis for judicial estoppel exists, and, consequently, MIM is not judicially estopped from now asserting, contrary to its initial position, that California substantive law applies to MIM's defamation claim.

In its reply, Fund II argues that Massachusetts law applies for the additional reason that the parties so agreed in the "Advisory Agreement" between Fund II and MIM.  Fund II relies on the following provision:  "This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts excluding that body of law pertaining to conflicts of law."  (See FAC Ex. B ¶ 8.7).  Under California conflicts of law principles, "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or relating to that agreement, including tortious breaches of duties emanating from the agreement or the legal relationships it creates."  See Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 470 (1992).  In that MIM has not had an opportunity to respond to such

---

[6]Although the Court, in its prior order, cited to an opinion issued by a district judge in the District of Massachusetts for such proposition, the cited opinion was not based on substantive Massachusetts law.  Indeed, federal courts sitting in diversity must apply "federal procedural law."  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).)

7

argument, the Court will defer ruling on the issue of whether to strike the prayer for punitive damages, in order to afford MIM an opportunity to brief the applicability of the above-referenced choice-of-law provision to MIM's claim for business defamation.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss and to strike is hereby DENIED in part and further ruling thereon is DEFERRED, as follows:

1. To the extent defendant seeks to dismiss the FAC, the motion is hereby DENIED.

2. To the extent defendant seeks to strike the prayer for punitive damages, the Court DEFERS ruling on the motion. MIM is afforded leave to file, no later than October 3, 2008, a supplemental opposition, not to exceed five pages in length, limited to the issue of whether the choice-of-law provision in the Advisory Agreement applies to MIM's business defamation claim; Fund II is afforded leave to file, no later than October 10, 2008, a supplemental reply thereto, not to exceed five pages in length. As of October 10, 2008, the deferred portion of defendants' motion will be taken under submission, unless the parties are otherwise informed.

**IT IS SO ORDERED.**

Dated: September 24, 2008

MAXINE M. CHESNEY
United States District Judge